[No. 59802-9.   En Banc.   September 16, 1993.]

KAREN Y. TAPPER, *Respondent*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Petitioner*.

*Christine O. Gregoire, Attorney General,* and *Karl F. Hausmann, Assistant,* for petitioner.

*Maltman, Reed, North, Ahrens & Malnati, P.S.,* by *Douglass A. North,* for respondent.

UTTER, J. — Under the Employment Security Act (Act), a worker who is discharged due to "misconduct connected with his or her work" is disqualified from receiving unemployment compensation benefits. Former RCW 50.20.060(1). In this case, the Employment Security Department (Department) determined that Karen Tapper, a claimant for unemployment compensation, had been discharged for misconduct and therefore denied benefits. The Superior Court for Stevens County affirmed the denial of benefits, but Division Three of the Court of Appeals reversed, holding that there had been no misconduct. The Department petitioned for review. We reverse and reinstate the decision of the Superior Court.

## I

Karen Tapper began her employment as a clerk at the Boeing Company in 1984. In June of 1989, while still employed as a clerk, Tapper was briefly suspended for insubordination and disruptive behavior. When she returned to work, Tapper and her supervisor, Gary "Charlie" Brown, executed a document known as a "Notice of Remedial Action". See Clerk's Papers, at 77. This document outlined a number of behavioral goals for Tapper and indicated that a failure to achieve these goals could trigger further suspension or even termination. The notice required Tapper to:

1. FOLLOW STEP BY STEP SET PROCEDURAL GUIDELINES IN PREPARING WORK PACKAGES.
2. COORDINATE EACH DAY'S ACTIVITIES WITH YOUR PEERS AND WORK TOGETHER TOWARD COMMON GOALS.
3. LIMIT YOUR TIME AWAY FROM YOUR WORK AREA TO REASONABLE AMOUNTS OF TIME.
4. INCREASE YOUR OUTPUT TO AN ACCEPTABLE LEVEL.

. . . .

1. LISTEN TO YOUR SUPERVISOR AND NOT DEVIATE FROM HIS INSTRUCTION[S].
2. CEASE DISRUPTIVE CONVERSATIONS WITH PERSONS FROM OTHER ORGANIZATIONS.
3. ELIMINATE SCREAMING OUT-BURSTS DISRUPTIVE TO THE PERSONS IN THE AREA.

Clerk's Papers (Notice of Remedial Action), at 77.

Soon after, Tapper was discharged from Boeing. The specific cause of the discharge has been disputed by the parties from the start. For his part, Brown felt that Tapper was insubordinate, was refusing to follow proper office procedures, was spending excessive time away from her work station, and was interfering with the activities of other workers; in sum, was failing to comply with the notice of remedial action. Tapper, however, has contended that the firing was in retaliation for certain charges of work-related mistreatment which she had filed with the Equal Employment Opportunity Commission.

The day after she was discharged, Tapper applied for unemployment compensation. After a brief initial investiga-

tion, the Department allowed the claim. Boeing requested a hearing asserting that Tapper was disqualified from receiving unemployment benefits because she had been discharged for "misconduct". A hearing on the appeal was held before an administrative law judge (ALJ), at which Brown and Tapper provided the only testimony with regard to the issue of misconduct.

The ALJ affirmed the Department's initial determination, finding that Tapper had been discharged for "perceived deficiencies" in her work performance, not for misconduct. He concluded that whatever problems Tapper had experienced at Boeing related to her ability (or inability) to relate to others and to follow directions and that these inabilities did not rise to the level of misconduct. See generally Clerk's Papers (Decision of ALJ), at 82.

Boeing petitioned the Commissioner of the Department for review of the ALJ's decision, and, after review of the record, the Commissioner reversed. The Commissioner found that Tapper had failed to pay heed to her supervisor's orders, indeed, had "ignored" these orders, and that this failure was more than a mere deficiency in performance. The Commissioner therefore denied benefits pursuant to the disqualification in former RCW 50.20.060(1). See generally Clerk's Papers (Commissioner's Decision), at 89-90.

Tapper appealed to the Superior Court for Stevens County where she continued to argue that the actual motivation for her discharge was retaliation for her employment complaints. The Superior Court affirmed the decision of the Commissioner on the grounds that the Commissioner's decision violated none of the standards of judicial review contained within the Washington Administrative Procedure Act. The court did not make a finding or holding with respect to whether Tapper's behavior amounted to misconduct.

Division Three of the Court of Appeals reversed, holding that the ALJ's decision had been correct. *Tapper v. Employment Sec. Dep't*, 66 Wn. App. 448, 453, 832 P.2d 136 (1992), *review granted*, 120 Wn.2d 1024 (1993). The court reasoned

that, under the standards set out in *Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 752 P.2d 372 (1988), Tapper's behavior was not misconduct in that it was only an "inability" to get along with others and to follow directions. *Tapper*, 66 Wn. App. at 453. Like the ALJ, the Court of Appeals concluded that this mere "inability" was insufficient to constitute misconduct.

The Department petitioned for review, and we reverse.

## II

■ Judicial review of a final administrative decision of the Commissioner of the Employment Security Department is governed by the Washington Administrative Procedure Act (WAPA). *Macey*, 110 Wn.2d at 312; *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 389, 687 P.2d 195 (1984); *Becker v. Employment Sec. Dep't*, 63 Wn. App. 673, 675, 821 P.2d 81 (1991). The WAPA allows a reviewing court to reverse an administrative decision when, *inter alia*: (1) the administrative decision is based on an error of law; (2) the decision is not based on substantial evidence; or (3) the decision is arbitrary or capricious. RCW 34.05.570(3). In reviewing administrative action, this court sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency. *See Macey*, 110 Wn.2d at 312 (citing *Farm Supply Distribs., Inc. v. State Utils. & Transp. Comm'n*, 83 Wn.2d 446, 448, 518 P.2d 1237 (1974)); *Shaw v. Department of Empl. Sec.*, 46 Wn. App. 610, 613, 731 P.2d 1121 (1987).

## A

■ The first issue raised by this appeal is the appropriate set of factual findings which are to be employed by this court in exercising review. Under our case law, the determination of whether a particular employee's behavior constitutes "misconduct connected with his or her work" is a mixed question of law and fact, in that it requires the application of legal precepts (the definition of "misconduct connected with his or her work") to factual circumstances (the details of the employee's discharge). *See Henson v. Employment Sec. Dep't*,

113 Wn.2d 374, 377, 779 P.2d 715 (1989); *Macey*, 110 Wn.2d at 312; *Harvey v. Department of Empl. Sec.*, 53 Wn. App. 333, 336-37, 766 P.2d 460 (1988); *see also Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 330, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983). Analytically, resolving a mixed question of law and fact requires establishing the relevant facts, determining the applicable law, and then applying that law to the facts. The characterization of "misconduct" as a mixed question of law and fact does not mean that we are free to substitute our judgment for that of the agency as to the facts; instead, the factual findings of the agency are entitled to the same level of deference which would be accorded under any other circumstance. *See Franklin Cy.*, 97 Wn.2d at 329-30. The process of applying the law to the facts, however, is a question of law and is subject to de novo review. *Henson*, 113 Wn.2d at 377; *Johnson v. Department of Empl. Sec.*, 112 Wn.2d 172, 175, 769 P.2d 305 (1989). The findings of fact made by the agency below are therefore critical to our resolution of the question of whether Tapper engaged in misconduct connected with her work.

Throughout these proceedings, the facts surrounding Tapper's discharge from Boeing have been bitterly contested. At this stage, the dispute has been reduced to a disagreement over whether the Commissioner properly and authoritatively modified the findings of fact made by the ALJ.[1] Tapper has not argued that the Commissioner's findings of fact were not supported by substantial evidence under RCW 34.05-.570(3)(e); instead, she has essentially contended that the Commissioner was legally bound by the factual findings of the ALJ who presided over the initial hearing. The Department argues that the Commissioner is the final authority on findings of fact regarding disputes over unemployment compensation and therefore appropriately modified the ALJ's findings.

---

[1]As noted above, Tapper argued before the Department and to the Superior Court that her discharge was in retaliation for her employment complaints. She has not pressed this contention before this court.

■ The WAPA describes the procedures by which subject agencies are to conduct internal review of the adjudicative decisions of lower officials. RCW 34.05.464(4) states, in part:

> (4) The officer reviewing the initial order (including the agency head reviewing an initial order) is, for the purposes of this chapter, termed the reviewing officer. *The reviewing officer shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing, . . .. * In reviewing findings of fact by presiding officers, the reviewing officers shall give due regard to the presiding officer's opportunity to observe the witnesses.

(Italics ours.) Under RCW 50.32.080, the Commissioner has the power to review ALJ decisions and is the final authority for departmental determinations as regards unemployment compensation. He or she is therefore a "reviewing officer" for purposes of RCW 34.05.464(4). As a reviewing officer, the Commissioner may "exercise all the decision-making power" of the official who presided over the initial agency hearing. Since the ALJ had the power to make findings of fact, the Commissioner has the power to make his or her own findings of fact and in the process set aside or modify the findings of the ALJ.

■ While there are no reported Washington cases construing RCW 34.05.464(4),[2] the federal courts have interpreted a virtually identical provision of the Federal Administrative Procedure Act to allow agency heads to substitute their own findings of fact for those made by hearing officers. *See FCC v. Allentown Broadcasting Corp.*, 349 U.S. 358, 364-65, 99 L. Ed. 1147, 75 S. Ct. 85 (1955) (Federal Communications Commission may reverse hearing examiner); *Hazzard v. INS*, 951 F.2d 435, 440 (1st Cir. 1991) (INS Board may reverse factual findings of immigration judge); *Stanley v. Board of Governors*, 940 F.2d 267, 272 (7th Cir. 1991) (courts defer to agency board's factual findings rather than those of ALJ); *Houston v.*

---

[2]This dearth is likely due to the youthfulness of the provision, which was part of the comprehensive 1988 revisions of the WAPA. *See* Laws of 1988, ch. 288, § 419, p. 1375.

*Sullivan*, 895 F.2d 1012, 1015 (5th Cir. 1989) (Social Security Appeals Council may reverse credibility findings of ALJ); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989) (same).[3] This federal case law provides persuasive support for our reading of RCW 34.05.464(4). *See Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n*, 112 Wn.2d 278, 283, 770 P.2d 624, 87 A.L.R.4th 627 (1989); *Clarke v. Shoreline Sch. Dist. 412*, 106 Wn.2d 102, 118, 720 P.2d 793 (1986). Commentary is also in agreement as to this interpretation of RCW 34.05.464(4). *See* Andersen, *The 1988 Washington Administrative Procedure Act — An Introduction*, 64 Wash. L. Rev. 781, 816 (1989).

We recognize that the rule prescribed by the statute appears to be somewhat at odds with the ordinary practice of appellate review. *See* Andersen, 64 Wash. L. Rev. at 816. It would perhaps be more consistent with traditional modes of review for courts to defer to factual findings made by an officer who actually presided over a hearing rather than to findings made by an agency administrator. The familiar rationale for deference to the factual findings of a trial court, the ability of the court to observe witness' demeanor and to evaluate credibility, *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 369-70, 798 P.2d 799 (1990), would seem to apply with equal force in the administrative context. In adopting RCW 34.05.464(4), however, the Legislature has made the judgment that the final authority for agency decisionmaking should rest with the agency head rather than with his or her subordinates, and that such final authority includes "all the decision-making power" of the hearing officer. RCW 34.05.464(4). Even were we

---

[3]Some federal courts have suggested that where the reviewing officer ignores or reverses the credibility findings of the hearing officer, heightened scrutiny should apply to substantial evidence review of any substituted findings of fact. *See, e.g., Sorenson v. Bowen*, 888 F.2d 706, 711 (10th Cir. 1989). Given the particular solicitude of RCW 34.05.464(4) for the credibility findings of the hearing officer, some such rule would seem to be warranted. However, since this is not a substantial evidence case, we do not address the question of what such a rule would look like. *Cf.* RCW 34.05.461(3) ("Any findings based substantially on credibility of evidence or demeanor of witnesses shall be so identified").

inclined to do so, it is not our role to substitute our judgment for that of the Legislature. We hold, therefore, that it is the Commissioner's findings of fact, to the extent they modify or replace the findings of the ALJ, which are relevant on appeal.[4]

In order to resolve the question of misconduct, we must identify the findings of fact actually made by the Commissioner. This task is complicated by the absence of clearly defined findings of fact and conclusions of law within the Commissioner's decision. When findings of fact are not explicitly delineated, or where those findings are buried or hidden within conclusions of law, it is within the prerogative of an appellate court to exercise its own authority in determining what facts have actually been found below. *See Kunkel v. Meridian Oil, Inc.*, 114 Wn.2d 896, 903, 792 P.2d 1254 (1990); *Strother v. Capitol Bankers Life Ins. Co.*, 68 Wn. App. 224, 244-45, 842 P.2d 504 (1992), *review granted*, 121 Wn.2d 1008 (1993).[5]

After reviewing the decisions of the Commissioner and of the ALJ, we conclude that the following relevant facts were found:

1. Tapper was discharged by Boeing not for a specific incident but instead for an "accumulation of problems",

---

[4]The only authority which Tapper relies on in opposition to the Commissioner's authority to make his or her own findings of fact is *Bajocich v. Department of Empl. Sec.*, 48 Wn. App. 45, 47, 739 P.2d 1155 (1987). *Bajocich* is inapposite. Not only was that case decided prior to the enactment of RCW 34.05.464(4), it did not even hold that the findings of an ALJ were to be given priority over the findings of the Commissioner. Instead, *Bajocich* only concluded that the findings of an ALJ, in the absence of any other findings, were binding in the same manner as those of a trial court. 48 Wn. App. at 47-48. Had the Commissioner made no independent findings of fact, *Bajocich* would be relevant, but that is not the case here.

[5]Tapper asserted strenuously at oral argument that, even if the Commissioner's findings are those relevant to this appeal, the Commissioner "adopted" the findings of the ALJ and therefore this court should look only to the ALJ's findings. While it is true that the Commissioner did adopt the ALJ's findings of fact, he did so "subject to the following additions, modifications and comments." Clerk's Papers, at 89. It is clear to us that the Commissioner did in fact make significant modifications to the findings of fact made by the ALJ. To the extent which the Commissioner did not modify the ALJ's findings, those findings are incorporated herein.

including excessive time away from her work area, failing to listen to her supervisor and abide his instructions, and engaging in disruptive conversations and screaming outbursts.

2. Tapper had been suspended for "insubordination" and had been warned regarding incidents similar to those for which she was suspended.

3. Following the suspension, Tapper was called into Brown's office "6 to 8 times" for deviating from instructions, for creating a disruptive atmosphere, and for excessive time away from her work station.

4. Tapper "ignored" instructions regarding her attitude, promptness, and behavior at the workplace. These instructions were those contained within the notice of remedial action.

5. On July 21, Tapper was 15 minutes late to work and was ordered to record the tardiness on her time card as "leave without pay". Tapper recorded a full 8 hours on her time card.

See Clerk's Papers, at 89-90.

These then are the facts relevant to the question of whether Tapper was discharged for misconduct connected with her work. Because Tapper did not attack any of these findings in her appeal, except to claim that the Commissioner had no legal authority to modify the findings made by the ALJ, we treat them as verities. *Tomlinson v. Clarke*, 118 Wn.2d 498, 501, 825 P.2d 706 (1992); *Clark v. Luepke*, 118 Wn.2d 577, 583, 826 P.2d 147 (1992).

### B

The next step in resolving the misconduct question is determining the appropriate definition of misconduct to be applied to the facts found by the Commissioner.

Under the Act, Washington provides partial wage replacement benefits, *i.e.*, unemployment compensation, to those workers who are involuntarily out of work and who are seeking further employment. *See* RCW 50.20.010. The chief purposes of unemployment compensation are to minimize

the disruption caused by involuntary inability to obtain employment and to provide support for unemployed workers as they seek new jobs. RCW 50.01.010; *Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 315, 752 P.2d 372 (1988); *International Shoe Co. v. State*, 22 Wn.2d 146, 173, 154 P.2d 801, *aff'd*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945).[6]

Ever since the introduction of unemployment compensation in Washington in 1935, the Act has also provided for disqualification of benefits for individuals who have either voluntarily left their employment or who were discharged due to work-related "misconduct". *See Macey*, 110 Wn.2d at 313. The latter of these disqualifications is presently codified at RCW 50.20.060, which states in part:

> An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has been discharged or suspended for *misconduct connected with his or her work . . ..*

(Italics ours.) Thus, when it is determined that a claimant for unemployment compensation was discharged from his or her employment for "misconduct", that claimant is denied benefits.

Work-related misconduct is not defined in the statute. *Macey*, 110 Wn.2d at 313; *Peterson v. Department of Empl. Sec.*, 42 Wn. App. 364, 369, 711 P.2d 1071 (1985), *review denied*, 105 Wn.2d 1011 (1986). There is, however, a substantial amount of case law construing the term.[7]

---

[6] It is sometimes also stated that unemployment compensation serves the purpose of economic stability by providing purchasing power during periods of recession. *See, e.g., Macey*, 110 Wn.2d at 324-25 (Dore, J., dissenting); Burns, *Unemployment Compensation and Socio-Economic Objectives*, 55 Yale L.J. 1, 12 (1945-1946).

[7] A recent amendment to the Act now defines "misconduct" as "an employee's act or failure to act in willful disregard of his or her employer's interest where the effect of the employee's act or failure to act is to harm the employer's business." Laws of 1993, ch. 483, § 1, p. 2017. However, by the terms of the amendment this definition only applies to employment separations taking place after July 3, 1993. Laws of 1993, ch. 483, § 23(1), p. 2039. Therefore, we do not consider what effect, if any, the new legislation would have on our existing misconduct jurisprudence.

■ It is well established that the operative principle behind the disqualification for misconduct is the *fault* of the employee. *See Macey*, 110 Wn.2d at 318; *Henson*, 113 Wn.2d at 382 (Durham, J., dissenting); *Johnson v. Employment Sec. Dep't*, 64 Wn. App. 311, 315, 824 P.2d 505 (1992); *Durham v. Department of Empl. Sec.*, 31 Wn. App. 675, 678, 644 P.2d 154 (1982). An employee is only guilty of misconduct when his or her behavior is such that the "unemployment is in effect voluntary". *Macey*, 110 Wn.2d at 316. This statutory focus on the fault of the employee serves several purposes. First, the fault principle preserves the use of the State's resources for "innocent" workers who are involuntarily unemployed and are thus more deserving of compensation. *See* RCW 50.01.010; *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 388, 687 P.2d 195 (1984). Second, since the unemployment compensation fund is made up in large part of employer contributions, it is unfair to force employers to compensate employees who had engaged in and were discharged for misconduct. *See* T. Broden, *Social Security and Unemployment Insurance* § 13.02, at 492 (1962). And third, the disqualification for misconduct is penal in nature, *Peterson*, 42 Wn. App. at 370, and serves as a general deterrent against employee misconduct.

In *Macey*, this court set out what it characterized as a 3-part test for analyzing on-duty violations of employer rules as misconduct under the Act. A careful examination of *Macey*, however, reveals the test in fact has four elements. These four elements are: (1) The rule which is allegedly violated must be reasonable under the circumstances of the employment; (2) The violative conduct of the employee must be connected with his or her work; (3) The conduct of the employee must violate the rule; and, (4) The violations must be intentional, grossly negligent, or continue to take place after notice or warnings. That is, the behavior cannot be characterized as mere incompetence, inefficiency, erroneous judgment, or ordinary negligence. *See Macey*, 110 Wn.2d at 318-19. It is appropriate to analyze this case under the standards we set out in *Macey* because the misconduct of which

Tapper was accused involved on-duty violations of employer work rules (*i.e.*, the rules laid out in the notice of remedial action).

## C

The final step of the misconduct inquiry is applying these standards to the facts as found by the Commissioner. There is no question but that the first three parts of the *Macey* test are met in this case, and Tapper does not argue otherwise. First, the rules which Tapper allegedly violated were reasonable within the context of her employment. As described in the notice of remedial action, they included observing certain procedures regarding office production, listening to her supervisor, avoiding excessive time away from her work station, and refraining from disruptive behavior. These are all certainly reasonable requirements in the context of Tapper's employment.

Second, the violations of these rules certainly were connected with Tapper's work. Failing to observe office production procedures, refusing to listen to one's supervisor, spending excessive time away from a work station, and engaging in disruptive behavior meet the *Macey* requirement of affecting work performance both of the individual and of the employer's work force in general. It is not necessary under *Macey* to show that the behavior in question had an actual adverse impact, as long as a minimal showing of employer interest in the behavior is shown. *Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 318-19, 752 P.2d 372 (1988). Such an interest is manifest here.[8]

Finally, the factual findings of the Commissioner compel the conclusion that Tapper violated the rules contained within the notice of remedial action.

---

[8]The second step of the *Macey* test is not merely a restatement of the first. While in many cases the circumstances which bear on whether an employer rule is reasonable will also be relevant as to whether violation of the rule is connected with employment, this will not always be true. For example, an employee might violate a reasonable employer rule such as "listen to one's supervisor" in a manner unrelated to the employment situation, perhaps by violating the rule in regard to a personal matter. *Cf. Henson*, 113 Wn.2d at 381-87 (Durham, J., dissenting) (employee's refusal to attend Alcoholics Anonymous meetings was not connected with work).

The only issue in this case with respect to the application of the *Macey* test regards its fourth prong, which excludes inability, inefficiency, and ordinary negligence from the definition of misconduct. *See* Kempfer, *Disqualifications for Voluntary Leaving and Misconduct*, 55 Yale L.J. 147, 162 (1945-1946) ("It is well established that inefficiency or ordinary negligence is not misconduct"). The Court of Appeals held that Tapper's behavior did not constitute misconduct because this element of the test was unfulfilled. *See Tapper*, 66 Wn. App. at 452-53. Inability, inefficiency, and ordinary negligence are excluded from the definition of misconduct because they are generally behaviors society does not consider to be the "fault" of the employee. Even repeated demands that a particular task be performed correctly do not transform incompetence into misconduct if the employee is basically incapable of the desired level of performance. *See, e.g., Becker v. Employment Sec. Dep't*, 63 Wn. App. 673, 674, 677, 821 P.2d 81 (1991) (persistent cash register errors were not misconduct despite warnings). Relying on its decision in *Becker*, the Court of Appeals concluded that Tapper's difficulties at work were the result of her inabilities and thus did not qualify as misconduct. *See Tapper*, 66 Wn. App. at 452-53.

■ Under the Commissioner's findings of fact, however, Tapper did not merely fail to perform up to company standards, she acted willfully in refusing to follow her supervisor's instructions. The Commissioner found that Tapper affirmatively "ignored" directions both to follow company procedure with respect to her job tasks and to record her tardiness on her time card. The Commissioner also found that Tapper was repeatedly warned regarding her failure to meet the requirements of the notice of remedial action. We hold that this behavior cannot be characterized as mere incompetence or inefficiency, and that it therefore satisfies the fourth element of the *Macey* test.

This holding is in accord with the decisions of the Court of Appeals, which has generally declined to apply the inability exclusion when employees have directly and affirmatively

refused to perform tasks demanded by their employers (assuming the requests otherwise meet the *Macey* requirements). *See, e.g., Harvey,* 53 Wn. App. at 342 (employee's refusal to obey direct order to immediately perform task constituted misconduct); *Peterson v. Department of Empl. Sec.,* 42 Wn. App. 364, 370-71, 711 P.2d 1071 (1985) (postal driver directly refusing to answer supervisor's questions regarding absence from work was misconduct), *review denied,* 105 Wn.2d 1011 (1986). We find this rule to be consistent with the fault basis of the misconduct disqualification. While a failure to *successfully* perform an employer request may not typically constitute misconduct, the same cannot be said of a refusal to even attempt to fulfill the requests. Where, as here, findings of fact establish that an employee "ignored" her employer's reasonable requests, the fourth prong of the *Macey* test is met.

## III

As a final matter, we note that our holding is in no way a judgment on the propriety of Boeing's decision to terminate Karen Tapper. The question of discharge is independent of the question of misconduct. *See Johnson v. Employment Sec. Dep't,* 64 Wn. App. 311, 314-15, 824 P.2d 505 (1992); *Becker,* 63 Wn. App. at 677; *Ciskie v. Department of Empl. Sec.,* 35 Wn. App. 72, 76, 664 P.2d 1318 (1983). Boeing may or may not have been justified, as a matter of employment law or good business judgment, in terminating Tapper, but those questions are not before the court. Tapper's supervisor may or may not have handled the problems with Tapper as sensitively or capably as another supervisor might have, but that question is also not before the court. The only issue in this case is whether the facts surrounding the discharge, as found by the Commissioner, meet the test for misconduct set out in *Macey.* We hold they do and that the Commissioner was correct in denying benefits to Tapper.

The decision of the Court of Appeals is reversed and the decision of the Superior Court upholding the denial of bene-

fits is reinstated. Tapper's request for attorney's fees is accordingly denied.

BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

ANDERSEN, C.J., concurs in the result.