# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHAEL GIBSON and MELODY GIBSON, | ) ) ) | NO. 71038-9-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | |
| WASHINGTON STATE DEPARTMENT OF EMPLOYMENT SECURITY, | ) ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: October 27, 2014 |

LAU, J. — Under the Employment Security Act, a claimant who obtains unemployment benefits based on a material misrepresentation is disqualified from receiving benefits. RCW 50.20.070. The Employment Security Department determined that Michael and Melody Gibson committed fraud in connection with their applications for unemployment benefits. The Department disqualified the Gibsons for benefits and ordered repayment of the overpayment. Because the commissioner properly determined the Gibsons committed fraud, substantial evidence supports the findings of fact, and the decision is error free, we affirm the commissioner's decision.

## FACTS

Michael and Melody Gibson are the cofounders, officers, employees, and directors of Operation Lookout, a nonprofit they and community members founded in

1984. Operation Lookout provides services to family members of missing children. The Gibsons also cofounded another nonprofit—Caring for Our Children Foundation.

Operation Lookout provided Mr. Gibson's only source of employment income. From October 12, 2008 through March 10, 2012, Mr. Gibson worked at Operation Lookout as its president, head of case management, registered agent, and computer technician. Mrs. Gibson worked during this period as its executive director and treasurer. She also worked for Caring for Our Children Foundation and its thrift store, NXT2NU.

The Gibsons contend they were laid off from Operation Lookout in 2008. Mr. Gibson received unemployment benefits at various times between October 12, 2008, and March 10, 2012. For each week he applied for benefits online, he certified he had not worked and had no earnings. Based on this information, the Employment Security Department paid Mr. Gibson a total of $41,135 in unemployment benefits.

Mrs. Gibson applied for unemployment benefits on line from October 12, 2008 through October 17, 2009 and from June 19, 2011 through February 18, 2012.[1] For each week she applied for benefits, she certified that she had not worked and had no earnings. Mrs. Gibson was paid a total of $22,181 in unemployment benefits based on the certified information she provided.

Upon reviewing Operation Lookout's employer federal tax filings, the Department discovered that the Gibsons failed to report that they worked 40 hours per week and

---

[1] Mrs. Gibson was ineligible for benefits from August 2, 2009 through October 17, 2009, and June 19, 2011 through February 18, 2012. Thus, she received no benefits during those weeks. But she applied for benefits from June 19, 2011 through February 18, 2012 and certified she had not worked and had no earnings.

had earned income during the weeks they also collected unemployment benefits. During this time, Operation Lookout made payments in varying amounts to the Gibsons. Operation Lookout paid Mr. Gibson $45,991 in 2008, $23,278 in 2009, and $18,037 in 2010. A spreadsheet submitted by Mrs. Gibson shows that Operation Lookout paid her (Mrs. Gibson) a total of $66,635 from October 8, 2008, through February 4, 2012.

Operation Lookout's annual tax forms indicated Mrs. Gibson worked 40 hours per week in various positions and earned over $80,000 for these services for 2008, 2009, and 2010. The Department sent each of the Gibsons a determination notice informing them about their overpaid benefits, disqualification for benefits, and requirement to repay the overpaid benefits. The notices explained the Department action was based on the Gibsons fraudulent representation that they were unemployed during the weeks they filed claims for unemployment benefits.

The Gibsons appealed. Their appeals were consolidated for the purposes of the administrative hearing.

At the hearing, Suzanne Gibb, an employee of the Department's Office of Special Investigations, testified about the Department's fraud investigation. Gibb said that the Department conducted reviews of wage information by performing computer audits. Audits were performed for both Mr. and Mrs. Gibson. Gibb stated that the Department concluded that there was no clear distinction between the Gibsons personally and their nonprofit, Operation Lookout. She testified that the Department had no record that the Gibsons clarified how to report their income or employment status between October 2008 and March 2012.

Mr. Gibson testified that he and his wife were volunteers and received deferred wages earned between 2003 to 2006 when they received unemployment benefits. Mrs. Gibson did not attend the hearing.[2]

Accountant Martin Eller testified for Operation Lookout to explain the organization's financial and tax records. He said he failed to properly verify and check the prior year's financial statements due to a heart attack in 2009. He claimed that he received information from Operation Lookout that the Gibsons were volunteers and receiving deferred wages. Eller blamed his health condition for preventing him from accurately verifying and updating Operation Lookout's tax forms from prior years.

In sum, the Gibsons asserted that they worked as unpaid volunteers and received deferred wages from prior years worked.

In two separate orders, the ALJ (administrative law judge) concluded that the Gibsons failed to report their employment status, hours worked, and earnings during the weeks they also claimed unemployment benefits. She found Mr. Gibson's testimony evasive and "not credible": "Claimant was evasive with his response when asked about his job title, and dates of service, and unresponsive with regards to his rate of pay."

She concluded the Gibsons' volunteer while still receiving deferred compensation claim not "logically persuasive" and "clearly motivated by self interest so as to avoid the disqualification pursuant to RCW 50.20.070 and RCW 50.20.010."[3]

---

[2] The Gibsons mention the ALJ's denial of their continuance motion. They fail to present argument or cite to authority. We decline to address this claim. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). And the Gibsons fail to specify what material evidence Mrs. Gibson would have provided that would have made a difference in the outcome.

[3] The ALJ also concluded that even if the Gibsons' wages were deferred wages dating back to 2001 and they were not employed because they were volunteering their

The undersigned finds claimant's argument that he was unemployed when "volunteering" and without earnings when he collected deferred wages not logically persuasive. Claimant would have the Employment Security Department believe that he worked for almost 4 years with no expectation of wages when he had no other source of income and had worked exclusively for this company for more than 20 years. Such is not consistent with the ultimate report he and his wife provided to the Department regarding wages and hours, nor is such consistent with the employer's annual tax filings submitted each year by the business accountant which show claimant earned $45,991 in 2008, $23,278 in 2009 and $18,037 in 2010. His argument is clearly motivated by self-interest so as to avoid the disqualification pursuant to RCW 50.20.070 and RCW 50.20.010. His testimony is not credible.[4]

The ALJ determined that the Gibsons made false statements regarding a

material fact or knowingly failed to report a material fact and, as a result, fraudulently

obtained unemployment benefits:

Applying the above to the case at hand, the undersigned concludes claimant misrepresented her eligibility information regarding her employment status and earnings when filing her weekly certification for benefits during the period of time at issue. Claimant certified she was unemployed when in fact she was working full time. She reported no hours worked and no earnings when she performed the same or similar services as when she was paid and received income with the intent that the Department rely upon the information she reported and pay her benefits. She failed to report any earnings received. Claimant's counsel argues claimant was unemployed because she only provided volunteer services and was paid deferred wages. As set forth above such is not credible. Claimant was paid benefits as a result of the information she misrepresented when filing her weekly certification for benefits. She is not entitled to such benefits. Claimant worked for the employer and as the employer manipulated her status so as to ensure she had enough hours to establish a claim yet was only a volunteer

---

services, they would still be subject to disqualification of benefits during all weeks they claimed benefits because they would lack the necessary base year hours and wages to establish a valid claim from year to year.

A "benefit year" is the period following an initial claim during which a claimant may receive benefits. RCW 50.04.030. To establish a benefit year, a claimant must have earned wages in "employment" in at least 680 hours during the "base year." RCW 50.04.030. A "base year" is "the first four of the last five completed calendar quarters or the last completed calendar quarters immediately preceding the first day of the individual's benefit year." RCW 50.04.020.

4 Finding of Fact 20 for Melody Gibson is substantially similar to the quotation above, but omits reference to working at Operation Lookout for four years.

receiving back wages during the periods of time at issue so she could claim benefits. She never clarified her status nor her eligibility for benefits with the Department until well after the Department started to investigate her activities. She never disclosed her "volunteer status" nor the fact it resulted in full time hours of work. Unemployment benefits are payable to those individuals who are unemployed due to no fault of their own. Claimant was not unemployed. Claimant reported information to the Department in order to collect benefits when she believed she could identify herself as unemployed because she agreed to volunteer her services and willingly accepted wages she could support herself with, but chose to keep concealed by identifying them as past wages. If claimant's wages in fact were deferred wages dating back to 2001 and she was not employed because she volunteered her services she is otherwise subject to disqualification of benefits during all weeks claimed as she would lack the necessary base year hours and wages to establish a valid claim from year to year. Regardless, claimant misrepresented her eligibility to the Department and received benefits as a result. Due to her misrepresentation, claimant is subject to a fraud disqualification.[5]

The ALJ concluded that the wages the Gibsons received were not deferred wages but instead compensation for work performed: "The undersigned finds that all wages received by claimants during the weeks at issue are earned wages for those weeks and not deferred wages as claimant asserts."

The Gibsons appealed. The commissioner adopted the findings made by the ALJ with minor modifications and affirmed. The commissioner disqualified the Gibsons from receiving benefits for 26 weeks on the grounds they committed fraud and ordered repayment of the overpayment. The Gibsons appealed to superior court, which affirmed the commissioner's decision.

---

[5] Conclusion of law 8 for Mr. Gibson is substantially similar to the above quotation, but lists the amount of benefits he received as $63,000.

## ANALYSIS

### Standard of Review

Washington's Administrative Procedure Act, chapter 34.05 RCW, governs judicial review of a commissioner's decision. RCW 34.05.510; RCW 50.32.120; Rasmussen v. Dep't of Emp't Sec., 98 Wn.2d 846, 849, 658 P.2d 1240 (1983). This court sits in the same position as the superior court and reviews the record before the agency. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

For issues of disputed fact, the court reviews the commissioner's findings for substantial evidence in the agency record. RCW 34.05.570(3)(e); William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wn. App. 403, 411, 914 P.2d 750 (1996). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the finding's truth. Maplewood Estate, Inc. v. Dep't of Labor & Indus., 104 Wn. App. 299, 304, 17 P.3d 621 (2000).

The reviewing court is to view the evidence and the reasonable inferences therefrom in the light most favorable to the party who prevailed at the administrative proceeding below. William Dickson, 81 Wn. App. at 411. The commissioner's decision is prima facie correct, and the party asserting the invalidity of an agency action bears the burden of demonstrating such invalidity. RCW 34.05.570(1)(a); RCW 50.32.150; Anderson v. Emp't Sec. Dep't, 135 Wn. App. 887, 893, 146 P.3d 475 (2006). Unchallenged factual findings are verities on appeal. Tapper, 122 Wn.2d at 407.

This court reviews questions of law de novo. W. Ports Transp., Inc. v. Emp't Sec. Dept., 110 Wn. App. 440, 449, 41 P.3d 510 (2002). While review is de novo, courts have given a higher degree of deference to the commissioner's interpretation of

employment security law in view of the Department's expertise in administering the law. W. Ports, 110 Wn. App at 449-50.

When assessing mixed questions of law and fact, a reviewing court must (1) determine whether factual findings are supported by substantial evidence, (2) make a de novo determination of the correct law, and (3) apply the law to the applicable facts. Tapper, 122 Wn.2d at 403. Under the APA, a reviewing court may reverse if the commissioner's decision is not based on substantial evidence, is based on an error of law, or is arbitrary or capricious. RCW 34.05.570(3). An agency's decision is arbitrary and capricious if it is "willfully unreasonable, without consideration and in disregard of facts or circumstances." W. Ports., 110 Wn. App. at 450.

However, even if there were room for two opinions, a decision is not "arbitrary or capricious" for the purposes of the Administrative Procedure Act if it is made honestly and upon due consideration, even though the Court of Appeals thinks a different conclusion might have been reached. Bowers v. Pollution Control Hr'g Bd., 103 Wn. App. 587, 596, 13 P.3d 1076 (2000).

Substantial Evidence

The Gibsons' main claim asserts that the payments they received from Operation Lookout were deferred wages and, thus, not reportable. They allege that the commissioner's findings are not supported by substantial evidence. But despite numerous citations to the record, they fail to discuss why the findings are not supported by substantial evidence. They contend that the commissioner took the evidence out of context and ignored evidence. In essence, their arguments amount to challenges about credibility determinations and the weight of the evidence, without affording appropriate

-8-

deference to the commissioner. The Gibsons disregard the commissioner's findings that Mr. Gibson's testimony was evasive and not credible and that their arguments were not logically persuasive.

We may not substitute our judgment for that of the agency as to the facts. An agency's findings of fact are critical on judicial review. Tapper, 122 Wn.2d at 403. Evidence may be substantial enough to support a factual finding even if the evidence is conflicting and could lead to other reasonable interpretations. Fred Hutchinson Cancer Research Center v. Holman, 107 Wn.2d 693, 713, 732 P.2d 974 (1987).

An appellant must present argument to the court why specific findings of fact are not supported by the evidence and must cite to the record to support that argument. Inland Foundry Co., Inc. v. Dep't of Labor & Indus., 106 Wn. App. 333, 340, 24 P.3d 424 (2001). A separate assignment of error for each finding of fact a party contends was improperly made must also be included with reference to the finding by number. RAP 10.3(g). The Gibsons fail to provide argument addressing why the commissioner's findings are not supported by substantial evidence. Thus, we treat the findings as verities on appeal. Tapper, 122 Wn.2d at 407.

In any event, the record demonstrates that substantial evidence supports the finding that between 2008 and 2012 the Gibsons worked for Operation Lookout and earned wages while also receiving unemployment benefits.

The Internal Revenue Service tax documents—form 990—filed by Operation Lookout from 2008 to 2010 identify the Gibsons as employees working an average of 40 hours per week in various positions for the organization. The form 990s also identified "reportable compensation from the organization" that was paid to the Gibsons for their

services performed. These records show from 2008 to 2010, Mr. Gibson served as the president and head of case management. For 2008, Mrs. Gibson was the executive director, and from 2009 to 2010, she served as the treasurer. Mrs. Gibson provided a spreadsheet prepared by Operation Lookout's bookkeeper indicating that the Gibsons received wage payments from Operation Lookout during the same period they received unemployment benefits. The Gibsons however continued to file for weekly benefits certifying that they did not work and received "no other earnings."

The Gibsons performed the same services for Operation Lookout as unemployed volunteers as they did when employed for Operation Lookout. For example, Mr. Gibson described the work he did while receiving benefits as "a volunteer head of case management, developing policies, procedures, hiring administration . . . on site or on-call computer technician . . . ." Eller testified Mrs. Gibson told him that Mr. Gibson was laid off and volunteered as head of management. He also said that Mrs. Gibson told him she was laid off and volunteered as executive director. The Gibsons never disputed they laid themselves off, continued to do the same work as volunteers, received unemployment benefits, and at the same time paid themselves deferred earnings.[6]

---

[6] Gibb also testified about the Gibsons control over Operation Lookout. She said there was no clear distinction between the employer, Operation Lookout and the claimants, the Gibsons. For example, Mrs. Gibson signed her own separation statement. Gibb also described the Gibsons as the organization's controlling members. They were the "contact individuals for the corporation involving all matters of records involving employee, employer to the Department if you look at their tax records. . . . There is no other involvement by the other board members . . . ."

This manipulation of the corporate form to serve their own self-interest is reflected in the commissioner's conclusion of law 8.

We conclude the Gibsons' improper challenge to the findings of fact renders the findings a verity on appeal. But even assuming a proper challenge, substantial evidence supports the commissioner's findings of fact. The Gibsons' challenge to the findings here fails.

<u>Arbitrary and Capricious</u>

The Gibsons also contend the commissioner's decision is arbitrary and capricious. We disagree. "Willful" and "unreasonable" means actions made without consideration and without regard for the facts. The record demonstrates the Department's careful review of voluminous documents, consideration of the witnesses' testimony, and argument of counsel. The ALJ made detailed findings of fact and conclusions of law grounded in the hearing evidence and the relevant law. The Gibson's chief complaint faults the ALJ's fact-finding prerogative. We decline to invade the province of the fact finder. A reviewing court will not substitute its judgment for that of the agency regarding witness credibility or the weight of evidence. As noted, the ALJ found Mr. Gibson's testimony evasive and not credible and found his volunteer-deferred wages claim illogical. The ALJ made these critical findings after review and consideration of all the evidence presented at the hearing. The Gibsons' arbitrary and capricious challenge fails.

<u>Fraud</u>

The Gibsons contend the commissioner's fraud conclusion is arbitrary and capricious because it is not supported by clear, cogent, and convincing evidence in light of the total record. We disagree. The Gibsons' challenge here amounts to similar assertions over the commissioner's findings of fact discussed above. For example, they

argue, "current full time employment, 40 hours per week of work, and pay for current services rendered are findings irreconcilable with the evidentiary record as a whole and must be reversed." Appellant's Br. at 28.

Under the Employment Security Act, a claimant who knowingly makes a false statement or misrepresentation of material fact is disqualified from receiving benefits. RCW 50.20.070. A misrepresentation occurs when all of the following conditions are met:

(a) The individual has made a statement or provided information.
(b) The statement was false.
(c) The individual either knew the statement was false or did not know whether it was true or false when making it.
(d) The statement concerned a fact that was material to the individual's rights and benefits under Title 50 RCW.
(e) The individual made the statement with the intent that the department would rely on it when taking action.

WAC 192-100-050(1). Circumstantial evidence, rather than direct evidence, is enough to establish fraud if the evidence is clear, cogent, and convincing. WAC 192-100-050(2).

"The clear, cogent, and convincing burden of proof contains two components: (1) the amount of evidence necessary to submit the question to the trier of fact or the burden of production, which is met by substantial evidence; and (2) the burden of persuasion." Endicott v. Saul, 142 Wn. App. 899, 909-10, 176 P.3d 560 (2008). As to the burden of persuasion, the trier of fact, not the appellate court, must be persuaded that the fact at issue is highly probable. Endicott, 142 Wn. App. at 910. In determining the sufficiency of the evidence to support a finding of fraud or misrepresentation, the reviewing court need only consider the evidence most favorable to the prevailing party. Bland v. Mentor, 63 Wn.2d 150, 155, 385 P.2d 727 (1963).

We conclude clear, cogent, and convincing evidence establishes that the Gibsons committed fraud, defined under the Employment Security Act, when they applied for unemployment benefits and falsely certified to the Department that they had not worked and had no earnings to report. RCW 50.20.070; WAC 192-100-050.

The Gibsons made false statements to the Department. Each week a claimant files for unemployment benefits, the claimant must truthfully report "[a]ny earnings and the number of hours you worked during the week claimed." WAC 192-140-005(5)(g). For each week the Gibsons claimed benefits, they were paid for 40 hours worked. They falsely reported no work hours and no earned wages. The commissioner rejected their volunteer and deferred wage claims, finding Mr. Gibson evasive and not credible.

The Gibsons knew their statements were false. As the findings indicate, the Gibsons falsely represented themselves as volunteers and received deferred wages in order to obtain unemployment benefits. The Gibsons, like every person claiming unemployment benefits, must review and affirmatively answer a fraud warning for each weekly claim of benefits. That warning provides: "Answer the questions on this form truthfully. You are responsible for the answers you give. False answers may result in overpaid benefits which you must pay back. If you provide information that you know is false or misleading, it is considered fraud, and is punishable by law." A claimant must indicate they understand the warning or else they are discontinued from the Internet benefits application procedure.

The Gibsons also received an unemployment claims kit. It warned that the Gibsons were required to report "all work and income each week." It also warned that a comparison of their reported earnings against the employer's record, if misrepresented,

would result in benefits denied and penalties. The Gibsons never reported "all work and income earned" for each week of benefits sought. The Gibsons knew the information they provided was false.

The Department allowed the Gibsons unemployment benefit claims based on their false reports of no work and no income. There is no doubt these false statements were (1) material in securing the unemployment benefits to which they were not entitled and (2) made with the intention that the Department would act on them by granting unemployment benefits. The Gibsons' burden of proof challenge fails.

Attorney's Fees

The Gibsons request attorney's fees under RCW 50.32.160. An appellant is entitled to reasonable attorney's fees if the decision of the commissioner is reversed or modified. They are not entitled to an award of fees.

CONCLUSION[7]

For the reasons discussed above, we affirm the commissioner's decision.

WE CONCUR:

---

[7] We decline to address the Gibsons' claim of "procedural irregularities" on grounds of inadequate argument and no citation to authority. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996); RAP 10.3(a)(6).

-14-