IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BONNIE M. WILSON, | ) | |
| | ) | No.  39886-2-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMPLOYMENT SECURITY | ) | UNPUBLISHED OPINION |
| DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | |

COONEY, J. — Bonnie Wilson was employed by the Puyallup School District

(District) until resigning in December 2021.  Thereafter, she applied for unemployment

assistance through the Employment Security Department (ESD).  In finding Ms. Wilson

lacked good cause to quit, the ESD denied her application.

On appeal, Ms. Wilson contends the ESD misapplied the law when it determined

she was ineligible for unemployment assistance due to a lack of good cause to sever the

employment relationship.  We affirm.

BACKGROUND

Ms. Wilson was employed by the District as a human resources information

analyst.  In July 2020, during the COVID-19 pandemic, "a couple" employees in the

human resources department "were let go" and a "few other employees either resigned . . . or moved to other positions." Administrative Record (AR) at 44. As a consequence of the diminished workforce, Ms. Wilson's workload increased. The increased workload resulted in Ms. Wilson suffering stress, anxiety, and panic attacks. On August 1, 2021, Ms. Wilson's physician diagnosed her with "clinical anxiety with panic attacks" and advised her to cease working, take her prescribed medications, and engage in counseling. AR at 47, 79-82. Ms. Wilson's physician noted the probable duration of her incapacity was six months (until March 1, 2022).

Contrary to her physician's advice, Ms. Wilson continued to work until November 21, 2021. During that period, Ms. Wilson "felt that [her] medical condition was manageable and . . . the responsibilities of [her] job were important." AR at 65. Simultaneously, Ms. Wilson was involved in discussions with the District concerning restructuring the human resources department. Ms. Wilson was also engaged in weekly meetings with the District about the prioritization of her job duties. Some of Ms. Wilson's duties were transferred to another employee.

On November 22, 2021, Ms. Wilson requested a leave of absence. The District granted her request. In Ms. Wilson's absence, the District worked on restructuring the department so as to alleviate some of Ms. Wilson's duties. The District was also in the process of posting employment positions consistent with the restructuring.

No. 39886-2-III
*Wilson v. Employment Security Department*

On December 27, 2021, five weeks into her leave of absence, Ms. Wilson resigned her position with the District. Although Ms. Wilson was unaware of whether the symptoms from her anxiety would abate by March 1, 2022, she reasoned that her health was deteriorating and she would not be healthy enough to return to work by the expiration of her leave of absence. Between the commencement of Ms. Wilson's leave of absence and when she submitted her resignation, Ms. Wilson never communicated with the District about how her duties would differ upon her return to work. In the event Ms. Wilson's condition had not resolved by March 1, 2022, the District was willing to extend her leave.

After Ms. Wilson resigned, she applied for unemployment assistance through the ESD. The ESD "decided [Ms. Wilson] didn't have a good reason for quitting [her] job" and denied her application. AR at 73. Ms. Wilson appealed the ESD decision to the Office of Administrative Hearings (OAH). Following a hearing, the OAH issued its initial order that affirmed the ESD's determination. In the initial order, the administrative law judge (ALJ) found, in part:

> (3) Beginning in 2020, the Department that [Ms. Wilson] worked in for Employer had an increase in workload as they lost personnel. The increasing workload was difficult for [Ms. Wilson] to manage and she began to suffer from anxiety. [Ms. Wilson] discussed these problems with Employer. Employer could not immediately fix the workload issues, but began working on a restructuring of the department to better balance their workload.

3

(4) [Ms. Wilson]'s doctor advised her to stop working due to panic attacks and anxiety from August 1, 2021 through March 1, 2022. . . . Despite medical advice, [Ms. Wilson] continued to work.

(5) On or around November 21, 2021 there were mistakes made by [Ms. Wilson] during a computer upgrade. [Ms. Wilson] had a meeting that day with two members of management to discuss the mistakes. The following day, [Ms. Wilson] applied for a Leave of Absence to commence November 21, 2021 and last through March 1, 2022.

(6) While [Ms. Wilson] was on leave Employer moved forward with restructuring, including reassigning some of the claimant's duties to other positions to accommodate her upon her return.

(7) If [Ms. Wilson] had wanted to remain on leave beyond March 1, 2022, Employer was very willing to extend her absence under various forms of leave.

(8) [Ms. Wilson] decided that she would not be healthy enough to return to work after her leave and resigned [o]n December 27, 2021. This conflicts with her doctor's advice that she would recover by March 1, 2022.

AR at 107.

The ALJ recognized that in a "voluntary quit case" Ms. Wilson, as the claimant, had the burden of establishing by a preponderance of the evidence she had good cause to quit employment due to her illness. AR at 108. The ALJ concluded that for Ms. Wilson to prevail she had the burden of proving that the job separation was necessary because of illness, that before quitting she pursued all reasonable alternatives to preserve her employment, unless seeking reasonable alternatives would be futile, and that she is not entitled to be reinstated to the same or a comparable position. The ALJ concluded:

[Ms. Wilson] quit because [she] w[as] having difficulty handling [her] workload and began to suffer from anxiety. [Ms. Wilson] did begin a leave

4

of absence, but resigned on December 27, 2021 before the leave was to end on March 1, 2022, in contradiction to her doctor's advice that she could return to work on March 1, 2022. Additionally, Employer was willing to offer various types of leave and was reassigning some of [Ms. Wilson]'s duties to accommodate her needs upon her return. Therefore, [Ms. Wilson] did not make a reasonable effort to preserve her job and did not have good cause to quit under RCW 50.20.050(2)(b)(ii).

AR at 109-10

Ms. Wilson appealed the OAH's initial order to the Commissioner's Review Office (CRO). After reviewing the entire record and providing due regard to the findings of the ALJ, the CRO adopted the OAH's findings of fact and conclusions of law.

Ms. Wilson appealed the CRO's decision to the superior court. Pursuant to RCW 34.05.518, the superior court certified the case to this court for direct review. Division II of this court administratively transferred the appeal to Division III.

## ANALYSIS

On appeal, Ms. Wilson contends the ESD misapplied the law when it determined that she was not eligible for unemployment assistance for a lack of good cause to sever the employment relationship under RCW 50.20.050(1)(b)(ii). We disagree.

Pursuant to RCW 50.32.120, judicial review of the CRO's decision is governed by the Administrative Procedure Act, chapter 34.05 RCW. On review, "[t]he [CRO]'s decision is prima facie correct, and the party asserting invalidity of an agency action bears the burden of demonstrating such invalidity." *Gibson v. Emp. Sec. Dep't*, 185 Wn.

App. 42, 51, 340 P.3d 882 (2014); RCW 34.05.570(1)(a); RCW 50.32.150.  We "view the evidence and the reasonable inferences therefrom in the light most favorable to the party who prevailed at the administrative proceeding below."  *Id.*

This court limits its review to the findings of the CRO, not the findings of the ALJ, unless, like here, the CRO adopted the findings of the ALJ.  *Tapper v. Emp. Sec. Dep't*, 122 Wn.2d 397, 406, 858 P.2d 494 (1993).  We will uphold an agency's findings of fact if the findings are "supported by evidence that is substantial when viewed in light of the whole record before the court."  *William Dickerson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 411, 914 P.2d 750 (1996).  Substantial evidence is evidence "sufficient to persuade a rational, fair-minded person of the finding's truth."  *Gibson*, 185 Wn. App. at 51.

Following a determination that substantial evidence supports the facts, we employ the de novo standard of review to determine if the law is correctly applied to the facts.  *Tapper*, 122 Wn.2d at 403.  "We give substantial weight to an agency's interpretation of the law within its expertise."  *Courtney v. Emp. Sec. Dep't*, 171 Wn. App. 655, 660, 287 P.3d 596 (2012).

The Employment Security Act (Act), Title 50 RCW, was enacted, in part, to set aside "unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."  RCW 50.01.010.  The Act is to be "liberally construed for the

6

purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum." *Id*. Consequently, a claimant who "left work voluntarily without good cause" shall be disqualified from receiving benefits unless good cause for quitting is shown under at least one of the enumerated exceptions. RCW 50.20.050(2)(a), (b).

RCW 50.20.050(2)(b) governs the circumstances that constitute good cause for separation from employment. Among other circumstances, good cause may exist if the separation was necessitated by an illness or disability of the claimant. RCW 50.20.050(2)(b)(ii). To establish good cause for leaving work because of an illness or disability, a claimant must show by a preponderance of evidence that: (i) they left work primarily because of an illness or disability, (ii) the illness or disability made it necessary to leave work, and (iii) they exhausted reasonable alternatives prior to leaving work. RCW 50.20.050(2)(b)(ii); WAC 192-150-055(1)(a). However, reasonable alternatives need not be pursued if the pursuit would be futile. RCW 50.20.050(2)(b)(ii)(A).

Ms. Wilson does not challenge the CRO's findings of fact. Unchallenged findings of fact become verities on appeal. *Harris v. Urell*, 133 Wn. App. 130, 137, 135 P.3d 530 (2006). The CRO found Ms. Wilson's reason for leaving work was "primarily due to concerns for her health," thereby satisfying WAC 192-150-055(1)(a)(i). AR at 125. With respect to WAC 192-150-055(1)(a)(ii), the CRO noted that "a claimant is generally required to provide competent evidence" that an illness or disability necessitated leaving

work, "preferably in the form of a treating physician's statement." *Id.* The CRO found

that Ms. Wilson's physician never recommended she resign, only that she temporarily

stop working. Consequently, the CRO found Ms. Wilson failed to establish the illness or

disability made it necessary for her to leave work.

Concerning WAC 192-150-055(1)(a)(iii), the CRO found Ms. Wilson did not

make a reasonable effort to preserve the employment relationship. A means of

preserving the employment relationship would have been for Ms. Wilson to follow the

advice of her physician, stop working until March 1, 2022, then consider whether the

District's restructuring of the human resource department and retention of new

employees accommodated her condition. Therefore, it would not have been futile for Ms.

Wilson to "continue pursuing alternatives to quitting." AR at 125.

Based on the findings of fact, the CRO concluded:

> [Ms. Wilson]'s concerns for her health were the primary reasons for her
> quitting her employment, but that the evidence fails to establish it was
> necessary for her to completely sever her employment relationship, and
> that the evidence shows that she failed to make a reasonable effort to
> preserve her employment. [Ms. Wilson]'s decision to seek work elsewhere
> is not questioned, but for unemployment insurance benefit purposes, she
> quit her job without good cause pursuant to RCW 50.20.050(2)(b)(ii) and
> WAC 192-150-055(1).

*Id.* at 126.

Ms. Wilson asserts the CRO misapplied the law when it concluded that her illness

or disability did not necessitate that she leave work, that she failed to make reasonable

efforts to preserve her employment, and that it was not futile to pursue alternatives to quitting. We disagree with each contention.

The CRO did not misapply the law when it concluded that Ms. Wilson failed to prove her illness or disability necessitated leaving work. Relevant to this appeal, "disability" is defined as a mental condition that is medically recognizable or diagnosable, exists as a record or history, and substantially limits the proper performance of the job. WAC 192-150-055(2)(d)(i). Ms. Wilson's physician diagnosed her with clinical anxiety and panic attacks. With the diagnosis, her physician noted her inability to work for six months. Ms. Wilson suffered a disability illness for purposes of RCW 50.20.050(2)(b)(ii).

"Necessary" is defined as "the conditions are of such degree or severity in relation to [the] particular circumstances that they would cause a reasonably prudent person acting under similar circumstances to quit work." WAC 192-150-055(2)(d)(xi). Although there is no statutory requirement that a claimant's necessity for leaving work be supported by a physician's opinion, such an opinion may prove useful.

Here, Ms. Wilson not only failed to supply medical evidence supporting her decision to leave work, she left work against the advice of her physician. After diagnosing Ms. Wilson with clinical anxiety and panic attacks, Ms. Wilson's physician directed her to stop working for six months. Rather than follow her physician's advice,

9

Ms. Wilson continued working for approximately 16 weeks before taking a leave of absence. Then, 5 weeks into the leave of absence, Ms. Wilson, admittedly unaware of whether her anxiety would resolve by March 1, 2022, promptly resigned. A reasonably prudent person acting under similar circumstances would adhere to the advice of their physician before deciding whether their condition, coupled with their changes to their work environment and job duties, made it is necessary to leave work.

In granting substantial weight to the CRO's interpretation of the law and in viewing the evidence and the reasonable inferences therefrom in the light most favorable to the District, the CRO did not misapply the law to the facts when it concluded that Ms. Wilson failed to prove her illness or disability necessitated leaving work.

Even if Ms. Wilson was able to prove her illness or disability necessitated leaving work, she also bore the burden of proving she had exhausted all reasonable alternatives prior to quitting. RCW 50.20.050(2)(b)(ii)(A). Before taking the leave of absence, Ms. Wilson was involved in discussions concerning the restructuring of the department. The discussions included realigning certain tasks for the generalists, analysts, and specialists, posting for new positions, and transferring some of Ms. Wilson's payroll duties to a new position. Yet five weeks into the leave of absence, Ms. Wilson predicted her job duties would remain unchanged by March 1, 2022, and resigned.

10

Because competent medical evidence established that Ms. Wilson's illness or disability would sufficiently resolve by March 1, 2022, in conjunction with the District's efforts at restructuring the human resources department and retaining additional employees, Ms. Wilson failed to prove she had exhausted all reasonable alternatives prior to quitting. It would not have been futile for Ms. Wilson to await the conclusion of the probable duration of her incapacity and learn of the changes to the human resources department before deciding whether resignation from the District was necessary.

In granting substantial weight to the CRO's interpretation of the law and in viewing the evidence and the reasonable inferences therefrom in the light most favorable to the District, the CRO did not misapply the law to the facts when it concluded that Ms. Wilson failed to exhaust all reasonable alternatives prior to quitting and that the pursuit of such alternative would have been futile.

Lastly, the CRO did not misapply the law when it failed to analyze whether Ms. Wilson was "not entitled to be reinstated to the same position or a comparable or similar position." RCW 50.20.050(2)(b)(ii)(B). Such an analysis would only be undertaken had Ms. Wilson proved the criterion of RCW 50.20.050(2)(b)(ii) and WAC 192-150-055(1)(a)-(c).

Citing RCW 50.32.160, Ms. Wilson requests an award of attorney fees and costs. Under RCW 50.32.160, an appellant may be awarded attorney fees and costs if we

11

No. 39886-2-III
*Wilson v. Employment Security Department*

reverse or modify the CRO's decision. Because we affirm the CRO's decision, Ms.

Wilson is not entitled to attorney fees and costs.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, J.

12