IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JILL FLECK, | ) | |
| | ) | No.  36992-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES FLECK, and STATE OF | ) | UNPUBLISHED OPINION |
| WASHINGTON DEPARTMENT OF | ) | |
| SOCIAL AND HEALTH SERVICES, | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — Jill Fleck appeals from the superior court's affirmation of a Department of Social and Health Services (DSHS) administrative law judge's ruling denying Fleck assistance in collecting child support from Charles Fleck, the father of her child. Because sufficient evidence supports the administrative law judge's (ALJ's) finding that Jill wrongfully deprived Charles of custody of the former couple's son, we affirm the superior court.

FACTS

Charles Fleck and Jill Fleck begat two children, Bryson, born January 18, 2000 and Abbey, born February 21, 2003. This action concerns only Bryson. We purloin our

facts from the dissolution court's records and testimony before a DSHS ALJ.

The parties separated and divorced in 2008. In 2008, the dissolution court ordered Charles Fleck to pay $1,794.24 in past due child support.

On June 4, 2010, the superior court entered an amended parenting plan that granted custody of Bryson and Abbey to Charles Fleck. The court granted Jill Fleck limited supervised visitation with the children. Section 2.2 of the parenting plan declared that Jill's involvement with her children was likely detrimental to their interests:

> The mother's involvement or conduct may have an adverse effect on the child's best interests because of the existence of the factors which follow.
> A long-term emotional impairment which interferes with the performance of parenting functions as defined in RCW 26.09.004.
> The abusive use of conflict by the parent which creates the danger of serious and substantial damage to the child's psychological development.

Administrative Record (AR) at 100.

In November 2010, Jill Fleck filed a motion for review and adjustment of her visitation rights. The superior court authorized expanded visits and telephone calls, but required that the visitations remain supervised. During a January 2011 review hearing, the court entered an order maintaining the supervision requirement and determined that Jill persisted as "a danger to her children's safety, health, and welfare." AR at 97.

In 2011, the dissolution court entered a satisfaction of judgment for the past child support owed by Charles Fleck. Thereafter, the court never entered any order obligating

Charles to pay support.

Bryson ran away from Charles Fleck's residence in late 2016 to live with Jill. Both Bryson and Charles then filed separate at-risk-youth petitions. In 2016, Jill Fleck filed a motion for an adequate cause determination to change the parenting plan, which motion the superior court denied on December 1, 2016.

In response to Jill Fleck's motion for adequate cause, the superior court found that Jill "meddled in the minor children's relationship with their father." AR at 73. The superior court found that Jill garnered unsupervised contact with her children and harbored Bryson in violation of the court's order, and the court entered a finding of bad faith on Jill's part for not disclosing the unsupervised contact. The superior court also sanctioned Jill twenty-five dollars for each day she did not return Bryson to his father's home.

In March 2017, Charles Fleck's and Bryson's at-risk-youth petitions were dismissed after Bryson and Charles reached an agreement. Pursuant to this agreement, Bryson would live at a friend's house. Bryson thereafter "came and went" from Charles' home to various friends until he turned 18, in January 2018. Clerk's Papers (CP) at 163. Charles, however, considered Bryson as living with him until his eighteenth birthday. Charles paid Bryson's living expenses while he stayed with his friends. Bryson returned home whenever he wished. Bryson's Social Security paperwork and an insurance card listed Charles's address as the residential address for Bryson.

After December 2016, Charles Fleck never moved to enforce the parenting plan. Bryson consistently told his father that he lived with friends when not living with his father. Charles received text messages from Bryson's friends' parents about Bryson.

PROCEDURE

On July 18, 2017, Jill Fleck filed a nonassistance assistance application with DSHS to acquire child support for Bryson. A nonassistance application is filed by a person who seeks assistance from DSHS to collect child support at a time when the applicant does not receive public assistance. WAC 388-14A-2010(1). In the application, Jill claimed that Bryson resided with her.

In response to Jill Fleck's application, DSHS prepared and served a notice and finding of financial responsibility (NFFR) directed to Charles. AR 25, 49-54. The NFFR imposed a support obligation on Charles beginning January 1, 2018 at $392 a month. DSHS based this amount on a monthly net income of $3,236 for Charles and a monthly net income of $892 for Jill. The NFFR also proposed establishing a back support obligation on Charles of $2,352 for the period of July 1, 2017 to December 31, 2017.

Charles objected to the NFFR and requested an administrative hearing. DSHS clarified, at the hearing, that the start date for the period of back support should be July 18, 2017, the date of the filing of the non-assistance application.

The ALJ held evidentiary hearings on February 27, 2018, August 14, 2018 and October 1, 2018. During the hearing, Jill Fleck claimed that Bryson lived with her since

4

September 2016. She produced documents that showed Bryson's address to be her residence. On November 2, 2018, the ALJ issued a decision.

In conclusion of law 5.7, the ALJ stated that the superior court possessed exclusive jurisdiction over the custody of Bryson. The ALJ proceeded to address child support, nonetheless, and the ALJ dismissed the NFFR. The ALJ thereby denied the request for past due, current, or future child support because Jill Fleck wrongfully deprived Charles with custody of Bryson in violation of the superior court order. The ALJ explained:

> In all orders, the court not only continued to give Mr. Fleck custody of Bryson, but also imposed supervised visitation requirements for Ms. Fleck. The court continually expressed serious concerns about the safety of Bryson while in the care of Ms. Fleck. The concern was enough that the court specifically prohibited Ms. Fleck from having unsupervised contact with Bryson, to participate in counseling, and to cease "meddling" in Mr. Fleck's custody of Bryson.
>
> Mr. Fleck has had to go to court numerous times to regain custody of Bryson and each time the court has upheld the original order. In fact, the court took the unusual step of sanctioning Ms. Fleck until she returned Bryson. Mr. Fleck did dismiss his Youth at Risk petition but this was based on an agreement between him and Bryson that Bryson would return home and that arrangements would be made to live with a friend. At no time did Mr. Fleck's actions or statements indicate that he consented to Bryson living with Ms. Fleck. When Bryson turned 18, Mr. Fleck recognized he was now a legal adult and could reside wherever he desired.
>
> Based on the evidence submitted, it is apparent that rather than returning to the court of continuing jurisdiction and modifying legal custody, Ms. Fleck has attempted to circumvent this process by applying for assistance through DSHS. The serious concerns of "meddling" raised by the superior court are apparent in this case. The safety and health concerns continually raised by the court makes it clear that jurisdiction for

custody and any related orders of child support remain with the Spokane County Superior Court under docket number 08-50-00087-2.

AR at 31-32.

Jill Fleck appealed the ALJ's ruling to the superior court. The superior court ruled that evidence supported the ALJ's ruling, and the court declined to overturn the ALJ's order.

LAW AND ANALYSIS

On appeal, Jill Fleck contends that the ALJ incorrectly concluded that he lacked jurisdiction to entertain her application for assistance. Jill also contends that insufficient evidence supported the ALJ's ruling that she interfered with Charles Fleck's custody of Bryson.

Jurisdiction

Jill Fleck first contends that the ALJ erred by concluding that the Spokane County Superior Court had continuing exclusive jurisdiction to issue a ruling that would grant her request that Charles pay past-due child support for Bryson. DSHS agrees with Jill that the superior court lacked exclusive jurisdiction and that DSHS possessed jurisdiction to assist if it deemed child support warranted. DSHS responds that Jill misreads the ALJ's order when she impliedly contends that the ALJ dismissed her application for lack of jurisdiction. DSHS argues that the ALJ's comment about jurisdiction only concerned child custody. DSHS contends that, had the ALJ believed the Superior Court had

6

continuing exclusive jurisdiction over child support, the ALJ would not have considered the issue of wrongful deprivation. We agree with DSHS.

DSHS may enforce an obligation for child support under chapter 74.20A RCW. RCW 74.20.040. In cases in which the obligee does not receive public assistance, DSHS may establish, by regulation, reasonable standards and qualifications for support enforcement services. RCW 74.20.040(2). Provided that no order exists that establishes the responsible parent's support obligation or relieves the responsible parent of a support obligation, DSHS may serve on the responsible parent a notice and NFFR requiring the parent to appear and show cause why the finding of responsibility or the amount thereof is incorrect and should be rescinded or modified. RCW 74.20A.055(1). An objection from the parent purportedly responsible for payment results in the scheduling of an adjudicative proceeding. RCW 74.20A.055(4)(a). After the hearing, the presiding or reviewing officer shall determine the past liability and responsibility, if any, of the alleged responsible parent. RCW 74.20A.055(4)(a); WAC 388-14A-3130(5).

When contending that the ALJ ruled that DSHS lacked jurisdiction, Jill emphasizes that the ALJ cited RCW 26.21A.120 and RCW 26.27.211. The ALJ cited these statutes in support of its conclusion of law 5.5 that stated as follows:

> A tribunal that has issued a child support order has and shall exercise continuing, exclusive jurisdiction to modify its child support order. A tribunal that has made a child custody determination has exclusive, continuing jurisdiction over the determination and any subsequent modifications to custody.

7

AR at 30 (footnotes omitted).

Despite mentioning the two statutes, the ALJ explicitly stated that DSHS and he held jurisdiction to address Jill Fleck's application for assistance. The ALJ wrote:

> 5.1 Jurisdiction: I have jurisdiction over this matter based on RCW 74.20A.055, RCW 74.20A.059 and RCW 34.12.

AR at 29 (boldface omitted). The ALJ also annunciated that he dismissed the application on grounds other than lack of jurisdiction. In conclusion of law 5.8, the ALJ penned:

> Based on the foregoing, the NFFR should be dismissed *because Mr. Fleck has shown wrongful deprivation of custody of Bryson* and jurisdiction remains with the Spokane County Superior Court.

AR at 32 (emphasis added). We read the conclusion of law to state that the superior court continues to hold jurisdiction only over custody of the child, not child support, and only because of the wrongful deprivation of custody.

### Sufficiency of Evidence

The Washington State Administrative Procedure Act (WAPA), ch. 34.05 RCW, governs judicial review of agency action. RCW 34.05.510. On review, this court sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency. *Tapper v. Employment Security Department*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). This court applies de novo review to questions of law and an agency's application of the law. *Cornelius v. Department of Ecology*, 182 Wn.2d 574, 585, 344 P.3d 199 (2015). Among other things, this court may grant relief from an

8

agency decision if that decision is arbitrary and capricious, not supported by substantial evidence, or an erroneous interpretation or application of the law. RCW 34.05.570(3)(d), (e),(i). Because Jill Fleck claims that the agency action is invalid, she carries the burden of establishing invalidity. *Cornelius v. Department of Ecology*, 182 Wn.2d at 585.

This court will grant relief from an agency action if the order is not supported by substantial evidence when viewed in light of the whole record before the court. RCW 34.05.570(3)(e). Substantial evidence exists when it is sufficient to persuade a fair minded person of the truth of the premise asserted. *Cornelius v. Department of Ecology*, 182 Wn.2d at 607; *Olmstead v. Department of Health, Medical Section*, 61 Wn. App. 888, 893, 812 P.2d 527 (1991). We overturn an agency's factual findings only if clearly erroneous. *Port of Seattle v. Pollution Control Hearings Board*, 151 Wn.2d 568, 588, 90 P.3d 659 (2004).

On appeal, Jill Fleck argues that Charles failed to meet his burden to prove wrongful deprivation of custody of Bryson. This issue presents this court with a mixed question of law and fact. *Tapper v. Employment Security Department*, 122 Wn.2d 397, 402 (1993). Resolving a mixed question of law and fact requires establishing the relevant facts, determining the applicable law, and applying that law to the facts. *Tapper v. Employment Security Department*, 122 Wn.2d at 403. This court still applies the usual standard of deference to an agency's findings of fact. *Tapper v. Employment Security Department*, 122 Wn.2d at 403.

DSHS may assist a custodial parent to collect child support from the noncustodial parent. Under DSHS regulations, a "custodial parent" is a person "with whom a dependent child resides the majority of the time period for which the division of child support seeks to establish or enforce a support obligation." WAC 388-14A-1020. Jill Fleck contends Bryson lived with her for a majority of the time beginning in September 2016. A noncustodial parent is the parent from whom support for the child is sought. WAC 388-14A-1020. "A parent is considered to be an NCP [noncustodial parent] when for the majority of the time during the period for which support is sought, the dependent child resided somewhere other than with that parent." WAC 388-14A-1020.

Charles Fleck bears the burden of establishing a defense to liability as the noncustodial parent in this proceeding. WAC 388-14A-3130(5). One possible defense is wrongful deprivation of physical custody of Bryson. RCW 74.20.065 declares:

> If the legal custodian has been wrongfully deprived of physical custody, the department is authorized to excuse the custodian from support payments for a child or children receiving or on whose behalf public assistance was provided under chapter 74.12 RCW, or for a child or children on behalf of whom the department is providing nonassistance support enforcement services.

One proves wrongful deprivation of custody by establishing the following:

> (a) A court of competent jurisdiction of any state, tribe or country has entered an order giving legal and physical custody of the child to the NCP;
> (b) The custody order has not been modified, superseded, or dismissed;

10

(c) The child was taken or enticed from the NCP's physical custody and the NCP has not subsequently assented to deprivation. Proof of enticement requires more than a showing that the child is allowed to live without certain restrictions the NCP would impose; *and*

(d) Within a reasonable time after deprivation, the NCP exerted and continues to exert reasonable efforts to regain physical custody of the child.

WAC 388-14A-3370(3) (emphasis added). Jill Fleck disputes whether sufficient evidence exists to establish subsections (c) and (d).

Sufficient, if not overwhelming, evidence supported the ALJ's finding that Jill Fleck wrongfully deprived Charles of Bryson, thereby excusing Charles from making child support payments. Charles held legal custody of Bryson pursuant to the parenting order. In fulfillment of subsection (c), Jill took or enticed Bryson away from Charles' physical custody and Charles never assented to the deprivation. While Jill never physically took Bryson against his will, the entire record shows that Jill repeatedly interfered with Charles' custody, including harboring Bryson when she should have returned him to Charles. She employed abusive conflict in order to encourage Bryson to live with her. Jill hid unsupervised contact with both children.

Charles Fleck had no knowledge of Bryson living with his mother. After dismissal of the at-risk-youth petitions, Charles continued to pay for Bryson's expenses under the understanding that Bryson lived with friends, not with his mother. Bryson always maintained the option of staying with his father during this time.

No. 36992-7-III
*Fleck v. Fleck*

Jill Fleck underscores that the ALJ failed to enter any finding that Bryson lived with her. Nevertheless, under WAC 388-14A-3370(3), Charles did not need to show that Bryson lived with Jill, only that Jill enticed Bryson away from Charles.

Sufficient evidence also supports the fulfillment of prong (d) of WAC 388-14A-3370(3). Charles Fleck filed an at-risk-youth petition to assist with the care of Bryson. Although, Charles allowed Bryson to stay with friends, he never relinquished custody. Bryson continued to come to Charles' residence, and Charles paid for his expenses. When Jill sought to gain custody in 2016, Charles successfully resisted the attempt.

CONCLUSION

We affirm DSHS' rejection of Jill Fleck's application for child support assistance.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Lawrence-Berrey, J.

12