# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ADVANCED DRILLING, LLC AND ROBERT C. LAYMON, | No. 59328-9-II |
| Appellants, | |
| v. | |
| DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, C.J. — Washington Department of Labor and Industries cited Advanced Drilling and Robert Laymon (Advanced Drilling) for electrical work without a permit on the property of George and Mitzi Frick.[1] Advanced Drilling appealed the citations, and an administrative law judge (ALJ) affirmed. Advanced Drilling appealed to the Electrical Board, and the Board found that Advanced Drilling performed work for which a permit was required but vacated the citations. The department appealed to the superior court, and the court remanded for further proceedings after identifying inconsistencies in the Board's initial order. On remand, the Board paused the public meeting to confer privately. Upon reconvening, the Board passed a motion to adopt the majority of the ALJ's findings and asked counsel for the department to work with Advanced Drilling to draft a proposed order. The Board entered a final order affirming the citations.

---

[1] Advanced Drilling and Laymon were issued separate citations, but were jointly represented throughout the below proceedings and in this appeal. We refer to the appellants jointly as Advanced Drilling for simplicity.

Advanced Drilling argues that the Board's private session was improper because the Administrative Procedure Act (APA), ch. 34.05 RCW, does not allow for such a process. Advanced Drilling also asserts that the Board violated the APA by receiving ex parte arguments from the department's counsel on remand. In addition, Advanced Drilling argues that the Board exceeded the scope of the remand order by reversing its initial decision rather than clarifying its reasoning. Finally, Advanced Drilling argues that the findings of fact essential to affirming the citations are not supported by substantial evidence because Advanced Drilling did not perform the electrical work for which the citation was given.

We affirm the Board's final order because the APA does not prohibit the Board from convening in a private session to resolve the noted inconsistencies. In addition, Advanced Drilling has not shown any evidence that an improper ex parte communication occurred between the Board and the department's counsel. The Board also retains discretion on remand to resolve the inconsistencies identified by the court and it was within this discretion to reverse the earlier decision. Finally, the citations are supported by substantial evidence because the essential findings are based on credibility determinations that are not re-weighed by this court on appeal.

FACTS

I. INSPECTION AND CITATIONS

George and Mitzi Frick hired Advanced Drilling to install a well on their property. Mr. Frick obtained a permit to run an electrical line from the meter box to the existing well house. He installed lights and plugs in the well house and ran a wire through the overhead studs to where the control panel would be, although it had not yet been installed. Mr. Frick then travelled to Alaska. When he returned, he asked the department to inspect his work.

The inspector noted improperly installed electrical work, including a well controller, conduits, wiring, and a pressure switch in the well house. The inspector asked Mr. Frick who had done the installation in the well house, and Mr. Frick said that he had installed basic plugs and lights and that Advanced Drilling had installed the well controller, components, and wiring for the well's power. The inspector then observed wiring outside the well house along a ditch and up an electrical conduit to the wellhead that was also improperly installed. Mr. Frick told the inspector that Advanced Drilling had done that work as well and added that he had not seen a permit from Advanced Drilling anywhere at the site. After verifying that Advanced Drilling had not obtained a permit, the inspector spoke to Robert Laymon, Advanced Drilling's administrator, who apologized for not getting the permit and understood that they would receive citations.

The department subsequently issued two citations: (1) a citation and a $250 penalty to Advanced Drilling for failing to obtain a permit before beginning an electrical installation, in violation of RCW 19.28.101 and WAC 296-46B-901; and (2) a citation to Laymon as administrator for failing to ensure a permit was used, a violation of RCW 19.28.061(5)(d), including an increased penalty of $500 because it was Laymon's second violation in a three-year period. Advanced Drilling appealed both citations.

## II. ALJ HEARING

At the initial appeal hearing before the ALJ, Laymon admitted that he made temporary connections at the well pump and wellhead to perform a test and pump out chlorine from the well, but disconnected them before leaving the site. The inspector and a department supervisor testified that even temporary connections required a permit and connecting wires to the wellhead is technically an electrical installation, regardless of whether they were later disconnected. Laymon

3

testified that he only worked on the pressure tank and water line inside the well house and denied installing the well controller, conduit, or electrical lines that formed the basis of the citation. Laymon indicated that he generally installs a well controller on about 30 percent of his jobs.

The Fricks each testified that they did not install the well controller, conduits, or electrical wires in the well house, or lay the wire from the well house to the wellhead. Ms. Frick testified that she did not know whether Mr. Frick or Advanced Drilling installed the well controller, but admitted that she had reconnected wires that were already in place to get water for the house after Advanced Drilling finished its work. Mr. Frick confirmed that he had told the inspector that Advanced Drilling did the work, but testified that he did not know for sure because he was in Alaska when the work was done.

After weighing the testimony, the ALJ affirmed both citations. The ALJ entered findings of fact, including finding 4.10 that "Advanced Drilling temporarily hooked the pump to electrical power in order to confirm it worked and to pump out the chlorine. . . . After these tasks were completed, Advanced Drilling disconnected the pump from electrical power." Admin. Rec. (AR) at 98 (internal citations omitted).[2] The ALJ also entered finding 4.11 that "Advanced Drilling did not purchase in advance an electrical work permit for any of its work." *Id.*

The ALJ entered a lengthy credibility finding (4.20) weighing the parties' credibility and finding that "Advanced Drilling did the electrical work that connected the [wellhead] to electrical power, apart from the re-connections later made by Ms. Frick." *Id.* at 100. Finding 4.20 contained undisputed facts that the work occurred "after Mr. Frick ran power to the well house and before

---

[2] Citations are made to the "Certified Agency Record" at the bottom center of the AR, for consistency with the parties' briefs.

Advanced Drilling temporarily connected the pump to electrical power" and that the electrical connections observed by the inspector "were made by Ms. Frick after Advanced Drilling had made and then disconnected the temporary connections." *Id.* at 99. Finding 4.20 also contained the following credibility-related determinations: that the work was within the scope of Advanced Drilling's licenses, that Advanced Drilling often performs such work when installing a pump, that Mr. Frick told the inspector that Advanced Drilling did the work, that Mr. Frick's later retraction was vague, that Laymon did not deny doing the work until after receiving the citations, that no one else had been identified as the person or entity that did the disputed work, and that Advanced Drilling made temporary connections at the wellhead and well controller to test the installation.

The ALJ also entered conclusion 5.3 that "Advanced Drilling did not obtain in advance a valid, proper electrical work permit for its electrical work at the Frick residence. Accordingly, Advanced Drilling violated RCW 19.28.101." *Id.* at 101.

III. ELECTRICAL BOARD

Advanced Drilling petitioned to the Electrical Board for administrative review. The Board reviewed the record, considered argument by the parties, and issued a final order adopting findings 4.10 and 4.11[3] and amended conclusion 5.3 as follows:

> Advanced Drilling did not obtain in advance a valid, proper electrical work permit for its electrical work at the Frick residence. Because Advanced Drilling did not install the electrical wire from the [wellhead] to the well house, it was not required to purchase a permit for this work. Therefore, Advanced Drilling did not violate RCW 19.28.101 in regard to that work. A valid, proper electrical work permit is required for [the] work identified in Finding of Fact 4.10.

*Id.* 75. The Board amended the ALJ's credibility finding (4.20) to state only that "Advanced Drilling did not do the electrical work that connected the [wellhead] to electrical power other than the temporary connection stated in no. 4.10." *Id.* Although the Board concluded that Advanced Drilling required a permit for the temporary connection, it vacated the citations.

---

[3] The Board adopted all of the ALJ's factual findings except for those listed below:

> Finding 4.6: "Sometime prior to August 25, 2017, Advanced Drilling drilled the well, installed the pump, tank, and waterlines, and installed electrical wiring from the [wellhead] to the pump house." AR at 80. On initial review, the Board amended this finding to read, "Sometime prior to August 25, 2017, Advanced Drilling drilled the well, installed the pump, tank and waterlines." *Id.* at 74. After remand, the Board entered the same finding it entered on initial review.

> Finding 4.9: "Advanced Drilling also installed the electrical wire from the [wellhead] to the well house." *Id.* at 81. On initial review, the Board vacated this finding in its initial review. After remand, the Board again vacated this finding.

> Finding 4.20: described in detail above. On initial review, the Board amended this finding to read, "Advanced Drilling did not do the electrical work that connected the [wellhead] to electrical power other than the temporary connection stated in no. 4.10." AR at 75. After remand, the Board entered a finding that mirrored the ALJ's initial credibility determination.

The department appealed to the superior court, which remanded the matter to the Board for further proceedings due to the contradiction between the findings in 4.10 and 4.11 and conclusion in 5.3, and its ultimate decision to vacate the citations. Before reaching its ruling, the superior court considered the administrative record that was before the Board at the time of its ruling. The court entered the following finding:

> that the order of the Board contains conflicts and contradictions that fail to clearly articulate the basis of the Board's decision to reverse the Initial Order of the ALJ.

*Id.* at 67. Based on that finding, the court ordered that:

> the matter shall be REMANDED to the Board to clarify the basis of its decision. Specifically, the Board should modify its order to include an explanation of its rationale for reversing the ALJ considering the Board's findings of fact Nos. 4.10 and 4.11 and Conclusion of Law No. 5.3. Additionally, the Board shall identify the substantial evidence it considered in forming its findings and conclusions that serve as the basis for the Board's decision to reverse the ALJ.

*Id.*

On remand, the Board sent a letter to the parties stating that it would review the record and modify its order but will not hear new evidence. In the Board's meeting, the chairperson stated that the Board would convene in executive session under RCW 42.30.110(1) that would last an hour, no final action would be taken during executive session and the Board would reconvene after the session.

Upon reconvening, the chairperson stated that the Board would entertain a motion to reverse its prior ruling and adopt the ALJ's findings and conclusions, with three changes to the findings that removed reference to Advanced Drilling pulling or installing wire between the well house and wellhead. A board member proposed the motion and it passed unanimously. The Board affirmed the citations.

After the roll call, the Board's chairperson asked whether the department's counsel was present and confirmed they would work with Advanced Drilling and Laymon to draft a proposed order reflecting the new decision by the Board. The Board's final order incorporated all the ALJ's findings of fact, except for the finding that Advanced Drilling had pulled and installed electrical wire from the wellhead to the pump house. The Board adopted the ALJ's credibility findings in finding 4.20. The Board also adopted the ALJ's conclusions of law.

Advanced Drilling petitioned for judicial review to the superior court, which transferred the case to this court under RCW 34.05.518.

## ANALYSIS

### I. LEGAL PRINCIPLES

#### A. STANDARD OF REVIEW

We sit in the same position as the superior court and apply the APA to the record before the Board. *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). The challenger of the agency action has the burden of demonstrating its invalidity. RCW 34.05.570(1)(a). We grant relief only if the party seeking judicial relief has been substantially prejudiced by the action complained of. RCW 34.05.570(1)(d).

We shall grant relief from an agency order in an adjudicative proceeding only if it meets one of the nine standards in RCW 34.05.570(3). Among the bases for relief are that the agency engaged in an unlawful procedure or decision-making process, or that the order is not supported by substantial evidence. RCW 34.05.570(3)(c), (e).

First, we shall grant relief if the "agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure." RCW 34.05.570(3)(c). We review

procedural challenges de novo. *City of Arlington v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 768, 779, 193 P.3d 1077 (2008).

Second, we shall grant relief if the order is not supported by substantial evidence when viewed in light of the whole record before the court. RCW 34.05.570(3)(e). Substantial evidence supports a challenged factual finding if the record contains sufficient evidence to convince a rational, fair-minded person that the finding is true. *King County*, 142 Wn.2d at 553. We do not reweigh evidence or judge witness credibility and, instead, defer to the Board's discretion in weighing the evidence. *Whidbey Env't Action Network v. Growth Mgmt. Hr'gs Bd.*, 14 Wn. App. 2d 514, 526, 471 P.3d 960 (2020).

B. APA APPEAL PROCEDURE

*1. Reviewing Initial Order*

In reviewing an initial order from the ALJ, reviewing officers (in this case, the Electric Board) shall (1) personally consider the whole record or such portions of it as may be cited by the parties, (2) afford each party an opportunity to present written argument, and (3) enter a final order disposing of the proceeding or remand for further proceedings. RCW 34.05.464(4)-(7).

A reviewing officer generally exercises "all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing." RCW 34.05.464(4); *see also Tapper v. Emp. Sec. Dep't*, 122 Wn.2d 397, 404, 858 P.2d 494 (1993). However, "[i]n reviewing findings of fact by presiding officers, the reviewing officers shall give due regard to the presiding officer's opportunity to observe the witnesses." RCW 34.05.464(4).

### 2. *Ex Parte Communication*

A presiding officer may not communicate regarding any issue in the proceeding other than communications necessary to procedural aspects of maintaining an orderly process, with any person employed by the agency without notice and opportunity for all parties to participate. RCW 34.05.455. RCW 34.05.455 applies to reviewing officers as it does to presiding officers. RCW 34.05.464(3).

### 3. *Remand Order Compliance*

In reviewing agency action under the APA, the reviewing court may "(a) affirm the agency action or (b) order an agency to take action required by law, order an agency to exercise discretion required by law, set aside agency action, enjoin or stay the agency action, remand the matter for further proceedings, or enter a declaratory judgment order." RCW 34.05.574(1).

When a court reviews matters within agency discretion, "the court shall limit its function to assuring that the agency has exercised its discretion in accordance with law, and shall not itself undertake to exercise the discretion that the legislature has placed in the agency." RCW 34.05.574(1). A court reviewing agency action must only remedy past errors, "not issue advisory opinions to forestall future ones." *Boeing Co. v. Gelman*, 102 Wn. App. 862, 871, 10 P.3d 475 (2000). The agency maintains discretion to resolve the issues identified by the court on remand. *Id.* at 871-72.

## II. APPLICATION

### A. APA APPEAL PROCEDURE

#### 1. Executive Session

Advanced Drilling argues that the private session violated statutes applicable to quasi-judicial proceedings. It argues, and the department agrees, that the term "executive session" comes from the Open Public Meetings Act (OPMA), ch. 42.30 RCW, which does not apply to quasi-judicial processes or those governed by the APA. Because the OPMA does not apply, Advanced Drilling argues the private session was improper because nothing in the APA allows for such a process.

The parties are correct that the OPMA does not apply to "a meeting of a quasi-judicial body which relates to a quasi-judicial matter between named parties" and matters governed by the APA. RCW 42.30.140(2)-(3). We apply a four-part test to determine whether an action of an administrative agency is quasi-judicial, considering (1) whether a court could have been charged with the decision, (2) whether the action has historically been performed by courts, (3) whether the action involves the application of law to facts to determine liability, and (4) whether the action resembles ordinary court business. *Wash. Fed'n of State Emps. v. Pers. Bd.*, 23 Wn. App. 142, 145-146, 594 P.2d 1375 (1979).

As the parties agree, the review process by the Board in this case was quasi-judicial because a court could have been charged to hear the appeal, it has historically been reviewed by the courts, the Board was charged with applying law to the facts surrounding the citation, and the action of hearing an appeal resembles the ordinary business of courts. Because the Board was a quasi-judicial body and the review was related to a quasi-judicial matter, the OPMA does not apply.

Advanced Drilling argues that because the OPMA does not apply, the Board violated APA procedure by holding a private session because review procedures under the APA must be open, citing RCW 34.05.449. However, RCW 34.05.449 governs the procedure at the initial hearing by the ALJ, not the review by the Board. When reviewing an initial order, RCW 34.05.464 applies. Nothing in RCW 34.05.464 requires a reviewing officer or the Board to hold an open session, especially on remand to address inconsistencies in the prior order. In its review, the Board complied with all procedures for reviewing officers under the APA, considering the whole record, affording each party an opportunity to present written argument, allowing discretionary oral argument, and entering a final order. *See* RCW 34.05.464(5)-(8). The private session occurred only on remand for the sole purpose of resolving inconsistencies in the prior order and no new facts or arguments were allowed by any party. Because nothing in the APA precludes such a process on remand, we conclude that the Board was permitted to do so.

*2. Ex Parte Appearance*

Advanced Drilling asserts that the department's counsel was present for the executive session and offered new arguments ex parte, while Advanced Drilling was excluded. It argues that allowing ex parte arguments without the opportunity to respond is a violation of both RCW 34.05.455 and fundamental due process.

The Board is prohibited from any ex parte communication with any person employed by the agency regarding any issue in the proceeding other than necessary procedural aspects of maintaining an orderly process. RCW 34.05.455(1). Advanced Drilling has the burden to show the invalidity of the Board's action. RCW 34.05.570(1).

However, Advanced Drilling fails to identify any evidence in the record that the department attended the private session and submitted arguments ex parte other than the existence of the private session itself. The sole evidence offered by Advanced Drilling on this issue is the following statement in the agency record:

> This appeal was sent back to the Board from Superior Court due to the nature of this case. The Board will convene in an executive session under RCW 42.30.110(1) for the following purpose: To discuss with legal counsel representing the agency matters relating to agency enforcement actions and litigation. We expect this executive session to last about approximately an hour. There'll be no final action taken during this executive session.

AR at 61.

However, it is clear from the context of the entire record that the speaker in this passage was referring to counsel for the *Board*, not counsel for the department. The record shows that after the Board reconvened and announced its decision, the chairperson asked if the department's counsel was present and if she could draft a proposed order. As the department notes, "[t]here would have been no need for the chair to ask if [the department's] counsel was present if the chair already knew that she was present because she had attended the executive session moments earlier." Br. of Resp't at 46. Additionally, the department's counsel has sworn that she did not attend.[4] Considering the absence of evidence in the record that the department's counsel attended the executive session, we conclude that Advanced Drilling has not carried its burden to show an improper ex parte communication between the department's counsel and the Board.

---

[4] Counsel's declaration was admitted pursuant to RAP 9.11 and is attached to L&I's motion to admit new evidence.

*3. Remand Order Compliance*

Advanced Drilling argues that the Board improperly exceeded the scope of the remand order when it entered its new order affirming the citation. It argues that the remand order specifically directed the Board to *clarify* the basis of its decision, not change the decision, and the Board failed to comply with the specific nature of the order by withdrawing and modifying the findings it had entered on the initial Board appeal and reinstating the ALJ decision without explanation.

The department responds that Advanced Drilling cites to no authority that the Board was prohibited from reaching a different result on remand to resolve an inconsistency.

We agree with the department. Though the superior court's order alerted the Board to inconsistencies between its findings and conclusions, on the one hand, and its decision to vacate the citation on the other, it did not order that this inconsistency be resolved *while maintaining the outcome*. Further, the nature of the inconsistency made it appropriate and logical for the Board to reach a different outcome. The contradiction between the Board's conclusion that Advanced Drilling *needed a permit* to temporarily hook the pump to electrical power and finding 4.11 that Advanced Drilling *had not obtained a permit* should have led the Board to affirm the citations. Instead, the Board vacated the citations in its initial order.

Given the inconsistency identified by the superior court, the Board was prompted to reexamine the logic of its initial decision. In doing so, the Board maintained full discretion as the reviewing officer. RCW 34.05.464(4). Resolving the inconsistency required the Board to either modify its conclusions or findings, or modify its decision to vacate the citations. Therefore, we

conclude that the Board acted within its discretion on remand to reverse its earlier decision, readopt the ALJ's findings, and affirm the citations.

B. SUBSTANTIAL EVIDENCE SUPPORTS THE CITATION

Advanced Drilling argues that the findings of fact "essential to the affirming of the citation[s]" are clearly erroneous. Br. of Appellant at 8. Although Advanced Drilling does not specifically identify the findings, its argument primarily discusses finding 4.20. Advanced Drilling argues that finding 4.20 is not supported by the evidence because Mr. Frick was mistaken when he told the inspector that Advanced Drilling did the electrical work that connected the well controller to the pump. Even though Advanced Drilling concedes that Laymon made temporary connections at the pump in order to pump out chlorine, and that a permit was required for that work, it argues that the basis of the citations issued was the electrical work connecting the well controller to the pump described in finding 4.20, for which there was not substantial evidence. Therefore, it argues, the Board should have vacated the original citations and the department would have been free to issue new citations for the temporary connections without a permit.

However, we do not reweigh evidence or reassess credibility on appeal. *Whidbey Env't*, 14 Wn. App. 2d at 526. Instead, we give deference to the Board's discretion in weighing the evidence. *Id.* Although the Board exercises broad discretion, it must give due regard to the ALJ's credibility determinations. RCW 34.05.464(4). Here, finding 4.20 and the Board's ultimate decision to affirm the citations were based on the ALJ's credibility determination and weight of the testimony given by Laymon and the Fricks. Indeed, the Board readopted finding 4.20, showing that it gave due regard to the ALJ's assessment of the parties' credibility.

We accept the ALJ's and the Board's weight of the testimony and assessments of witness credibility that support finding 4.20. Since we must accept the ALJ's and Board's assessments of witness credibility and weight of the evidence, a rational trier of fact would agree that Advanced Drilling connected the wellhead to electrical power. Regardless of who made the *permanent* hook up, the temporary hook up can be the basis for the citations, since the citation was for unpermitted electrical work at the Frick's property, and Advanced Drilling failed to obtain a permit before making the temporary connections. Therefore, we conclude that there is substantial evidence to support the Board's findings necessary to its decision to affirm the citations on remand.

## ATTORNEY FEES

Advanced Drilling requests attorney fees pursuant to RCW 4.84.340-.360. However, Advanced Drilling is not entitled to attorney fees because it does not prevail.

## CONCLUSION

The final order by the Electrical Board is affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 59328-9-II

CRUSER, C.J.

We concur:

MAXA, J.

GLASGOW, J.

17