# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| HENRY SCHEIN, INC., and DANIEL STALFORD, | DIVISION ONE |
| Appellants, | No. 86858-6-I |
| v. | UNPUBLISHED OPINION |
| WASHINGTON DEPARTMENT OF LABOR AND INDUSTRIES, | |
| Respondent. | |

DWYER, J. — Henry Schein, Inc., and its employee, Daniel Stalford, appeal from the final order of the Washington State Electrical Board affirming citations imposed by the Department of Labor and Industries arising from their alleged violations of the electrical code. The Board erred, they assert, because Stalford's actions occurred during the installation of a medical device and were, therefore, exempt from the electrical code requirements set forth in chapter 19.28 RCW. However, because the statutory exemption for medical device installation does not include the work performed by Stalford, this claim fails. Accordingly, we affirm the final order of the Board and uphold the citations issued by the Department.

I

Henry Schein, Inc. is an international distributor of health care products and services, providing those products and services primarily to office-based dental and medical practitioners. Schein employed Daniel Stalford as a senior

installation technician. For over 12 years, Stalford installed, repaired, and maintained dental equipment sold by Schein. He received specialized training from the equipment manufacturers on the subjects of installation, removal, repair, and troubleshooting of their devices. It is undisputed that Schein was not a licensed electrical contractor and Stalford was not a licensed electrician. Rather, Stalford often worked with electricians and other licensed professionals to install the equipment.

During the time in question, a dental clinic informed Schein that its dental evacuation system had ceased to operate properly. Schein dispatched Stalford in his role as an installation technician to remediate the emergency. That day, Stalford procured a replacement dental evacuation system—a Vac-Star 80 wet-ring vacuum pump manufactured by Air-Techniques—and arrived at the dental clinic at 7:00 a.m. the next morning to remove the inoperable unit and install the new one.

The Vac-Star 80 is a pre-fabricated unit with a pre-attached whip that is directly integrated into the vacuum pump. Both the inoperable unit and the new unit operated through a connection to an electrical disconnect by way of the whip, rather than a wall outlet. For the equipment at issue, the whip is flexible conduit containing three equipment leads, consisting of two black wires for the electrical current and a green grounding wire. Those wires connect to the service disconnect with retention nuts.

Stalford described the work he completed to replace the equipment. He began his work by first turning off the electrical power at the clinic's service

2

disconnect as well as at the circuit breaker. He then verified that the power was off through use of a "line checker." At that time, Stalford removed the three equipment leads of the inoperable unit from the service disconnect using a flat-bladed screwdriver.

After removing the inoperable unit, Stalford put the new vacuum unit in place. Stalford connected the electrical leads in the whip belonging to the new unit to the service disconnect, attaching the one green and two black wires to the disconnect using a screwdriver and retention nuts supplied by the factory. As he was installing the electrical leads, Stalford observed that the wire gauge of the existing electrical system was improper and also observed that the service disconnect was not in the correct location. Stalford contacted a licensed electrician with whom Schein regularly works to meet him at the jobsite and repair the faulty wiring.

Before the electrician arrived, two electrical inspectors from the Department of Labor and Industries, Erik Methe and trainee Victor Kraakmo, who had been driving nearby, noticed the Schein van parked outside the dental office. They proceeded to investigate. The inspectors met Stalford who stated that he was replacing a VacStar unit and had already disconnected the inoperable unit and installed the new unit. Stalford informed Methe and Kraakmo of the electrical issues he had encountered and that he would not turn on the service disconnect until those issues were addressed by the electrician who was on his way to the site. Methe also spoke with the electrical contractor to coordinate the

arrival of the electrician. Methe and Kraakmo departed the jobsite after 20 minutes, before the licensed electrician arrived.

The electrical contractor applied for the proper electrical permits shortly after dispatching the licensed electrician to the jobsite. The electrician performed the necessary repairs and upgrades, which included pulling new wires from the panel, removing the disconnects and installing new ones with correct clearance and rating, and installing additional conduit to ameliorate code violation from excessive wire in the existing conduit feeding the disconnect.

As a result of the visit by Methe and Kraakmo, the Department issued three citations to Schein, one citation for failing to have an electrical permit, one citation for performing work without a licensed electrician, and one citation for employing an individual without valid electrical competency.[1] Two of the citations—for performing electrical work without a license and employing an individual without valid electrical competency—were Schein's second such citations. Stalford received a single citation for performing electrical work without a certificate of competency or electrical training certificate in violation of RCW 19.28.161.

Schein and Stalford (collectively Schein), together, appealed the citations to the Office of Administrative Hearings. An Administrative Law Judge conducted a hearing in which employees of the Department testified, as did Stalford, his supervisor, and an expert witness. After the hearing, the Administrative Law

---

[1] The citations were issued for violations of RCW 19.28.010, RCW 19.28.041, and RCW 19.28.271, respectively.

Judge entered an initial order in which he concluded that Stalford, on behalf of Schein, had performed electrical work when he installed a line voltage whip from the power disconnect to the VacStar system and, therefore, affirmed the four citations.

Schein appealed the initial order from the Office of Administrative Hearings to the Electrical Board. The Electrical Board considered briefing and arguments from the parties and found that "the work conducted in this case was electrical work requiring certified electricians to comply with state law." The Board therefore concluded that Schein and Stalford violated the Washington State Electrical Code by installing the dental vacuum pump without the proper building permits or electrical certification. Accordingly, the Board affirmed the four citations and issued a final order to that effect.

Schein subsequently petitioned the Thurston County Superior Court for judicial review of the decisions that upheld the four citations. Both Schein and the Department agreed to direct review by this court pursuant to RCW 34.05.518. The superior court agreed and ordered the transfer. Schein's appeal is now before us.

II

Schein asserts that the Electrical Board erred by entering its final order. This is so, Schein contends, because connecting the dental vacuum unit to the service disconnect did not require "electrical work" and was, therefore, exempt from the licensing, registration, and permitting requirements of chapter 19.28 RCW. We disagree.

A

Washington's Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of administrative agency decisions. RCW 34.05.510. We apply the standards of RCW 34.05 directly to the record before the Department. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). We review the Department's legal conclusions de novo, giving substantial weight to the Department's interpretation of the statute it administers. City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wn.2d 38, 46, 959 P.2d 1091 (1998). "Findings of fact from the agency's final order are reviewed under the substantial evidence test and will be upheld if supported by a sufficient quantity of evidence to persuade a fair-minded person of the order's truth or correctness." Crosswhite v. Dep't of Soc. & Health Servs., 197 Wn. App. 539, 548, 389 P.3d 731 (2017).

The burden of demonstrating the invalidity of the agency's action is on the party asserting invalidity. RCW 34.05.570(1)(a); City of Redmond, 136 Wn.2d at 45. We may grant relief from an agency action only if we determine "that a person seeking judicial relief has been substantially prejudiced by the action complained of." RCW 34.05.570(1)(d).

B

This case concerns the Department's interpretation and application of RCW 19.28.371 to the actions performed by Stalford on behalf of Schein. When interpreting a statute, our "fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the

6

court must give effect to that plain meaning as an expression of legislative intent." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). To determine the plain meaning of a statute, we consider "the ordinary meaning of words, the basic rules of grammar, and the statutory context to conclude what the legislature has provided for in the statute and related statutes." In re Forfeiture of One 1970 Chevrolet Chevelle, 166 Wn.2d 834, 839, 215 P.3d 166 (2009). When a term is undefined, "we 'consider the statute as a whole and provide such meaning to the term as is in harmony with other statutory provisions.'" Citizens All. for Prop. Rts. Legal Fund v. San Juan County, 184 Wn.2d 428, 437, 359 P.3d 753 (2015) (quoting Heinsma v. City of Vancouver, 144 Wn.2d 556, 564, 29 P.3d 709 (2001)).

Pertinent here, we review an agency's interpretation of statutes and implementing regulations under the error of law standard, which allows us to substitute our judgment for that of the agency. Nationscapital Mortg. Corp. v. Dep't of Fin. Insts., 133 Wn. App. 723, 737, 137 P.3d 78 (2006). However,

> when an administrative agency administers a special field of law and possesses quasi-judicial functions because of its expertise in that field, we accord substantial weight to the agency's interpretation of the governing statutes and legislative intent. Furthermore, we give substantial deference to agency views when it bases its determination on factual matters, especially factual matters that are complex, technical, and close to the heart of the agency's expertise.

Nationscapital Mortg. Corp., 133 Wn. App. at 737-38 (citation omitted).

The statute at issue, RCW 19.28.371, exempts the installation of licensed medical devices from certain regulations of the electrical code. The statute reads, in pertinent part, as follows:

> The installation, maintenance, or repair of a medical device deemed in compliance with this chapter is exempt from licensing requirements under RCW 19.28.091, certification requirements under RCW 19.28.161, and inspection and permitting requirements under RCW 19.28.101. *This exemption does not include work providing electrical feeds into the power distribution unit or installation of conduits and raceways.* This exemption covers only those factory engineers or third-party service companies with equivalent training who are qualified to perform such service.

RCW 19.28.371(2) (emphasis added).

The parties do not dispute that the VacuStar system is a licensed medical device to which the statute applies. Further, the parties do not dispute that Stalford is not a certified electrician, that Schein is not a licensed electrical contractor, and that neither Schein nor Stalford obtained a permit to perform electrical work at the dental clinic.

Rather, the dispute concerns whether the work that Stalford performed fell within the exception to the exemption in RCW 19.28.371(2), and therefore requires compliance with the licensing and permitting statutes. Pursuant to the express terms of RCW 19.28.371(2), the installation of a medical device is exempt from licensing and permitting requirements except for "work providing electrical feeds into the power distribution unit or installation of conduits and raceways." Thus, installation that entails electrical feeds into a power distribution unit or conduits and raceways must comply with the permit, certificate, and license requirements of chapter 19.28 RCW. RCW 19.28.371(2). Accordingly, if

Stalford performed such work—undisputedly without permit, license or certificate—the Department correctly imposed the citations.

At the hearing in front of the Administrative Law Judge, the following evidence was presented. Stalford testified that he disconnected the electrical leads belonging to the inoperable unit from the service disconnect and subsequently connected the electrical leads from the whip attached to the new unit into the service disconnect. The Department's witnesses, for their part, opined that these actions amounted to electrical work and did not qualify for exemptions under the statute. Kraakmo testified that "the operation of making the connection into a junction box is an electrical procedure defined in the Code. Utilizing a connector and a lock nut, that is equipment -- defined as equipment. And that is supposed to be done by a certified electrician." When asked if RCW 19.28.371 exempted the provision of power to the VacStar unit, Phillip Jordan, the electrical field supervisor who approved the citations issued to Schein, replied, "No, absolutely not, no." Citing the express exceptions to the exemption, Jordan explained that "[a] whip would be considered and can be considered both, a conduit and a raceway."

Additionally, during the hearing in front of the Electrical Board, several members provided their opinion on the characterization of the work performed in this case. The chairperson of the Board noted that the device had "both line voltage breakers and low voltage breakers in there. That is the power distribution unit, and that is not part of the exemption of medical appliance. So the wiring going to that location must be installed by an electrician." Further, in

discussing Stalford's actions, one Board Member stated, "he went to service, turn the power off, went back to the disconnect, checked it, disconnected the whip from the disconnect.  That is electrical work, by definition."  Another Board Member explained, "when you took that whip and connected it to that junction box or disconnect, in the state of Washington, that is an electrical installation.  You need a permit.  You need an inspection.  Needs to be done by licensed electrician."

Given such evidence, the Board found that "the work conducted in this case was electrical work requiring certified electricians to comply with state law."[2]

Examining the agency record as a whole, the evidence supports this finding.  Stalford's installation of the VacuStar unit—disconnecting the electrical leads from the whip of the old unit from the service disconnect and connecting the electrical leads in the whip from the new unit to the service disconnect— encompassed "work providing electrical feeds into the power distribution unit or installation of conduits and raceways."  The plain language of RCW 19.28.371(2) is clear that such actions are specifically excluded from the medical device

---

[2] Schein assigns error to the final order entered by the Board, asserting that it affirmed the conclusions of the initial order by paraphrasing the relevant legal provisions without an explicit statement of the underlying evidence required by RCW 34.05.461(3).  However, Schein fails to provide citations to authority, references to the record, or meaningful analysis in support of this assignment of error as required by RAP 10.3(a)(6).  We generally will not consider claims lacking in such support.  Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).  Additionally, while we agree that the findings of fact and conclusion of law by the Board are significantly lacking in detail, the issue before us is the application of a statute to actions that are undisputed—detaching the whip of the old device and attaching the whip of the new device to the service disconnect.  Extensive findings of fact are unnecessary for our review.  Pursuant to RCW 34.05.570(3)(e), we review the order "in light of the whole record before the court, which includes the agency record for judicial review," and can, therefore, examine the agency record as required for our review.  See Whidbey Env'l Action Network v. Island County, 122 Wn. App. 156, 176, 93 P.3d 885 (2004).

exemption to the electrical code.  Accordingly, Stalford and Schein were required to have the requisite permits and credentials to perform the work described herein and, because they did not, the Department properly issued the citations and the Board did not err in affirming the citations.

Affirmed.

Dwyer, J.

WE CONCUR:

Feldman, J.          Bowman, J